STATE OF FLORIDA, ex rel. FONS A. HATHAWAY, v. CARL B. SMITH, CONLEY BROOKS and DANIEL W. MILLAN, as and together constituting FLORIDA INDUSTRIAL COMMISSION.

35 So. (2nd) 650
May 31, 1948

January Term, 1948
Special Division A

*Frank D. Upchurch* and *Bedell & Bedell,* for relator.

*Parker, Foster & Wigginton* and *B. T. Coleman,* for respondents.

TERRELL, J.:

October 27, 1947, the Florida Industrial Commission, hereinafter referred to as the Commission, adopted a resolution setting up what it elected to call a retirement policy in which all its employees are retired at the age of 65, with the condition that on appropriate showing the Commission in its "absolute discretion" may continue any employee in service from year to year but in no case shall such employment be continued after the age of 70. Pursuant to this policy the Commission adopted a resolution April 12, 1948, retiring relator as Director of the Florida State Employment Service, effective May 31, 1948.

This is an original proceeding in mandamus by which relator seeks to coerce the Commission to cancel and rescind its resolution of April 12, 1948. A return to the alternative writ raises four questions but they all turn on the question of whether or not the Commission is authorized to set up and en-

force a policy retiring relator and other employees from the service at the age of 65.[1]

It is also admitted that relator was appointed director of the Florida State Employment Service under the Merit System, that the Merit System Council recommended the retirement policy outlined in the forepart of this opinion and that the authority for its adoption is contained in Section 443.12 (4) Florida Statutes 1941, the pertinent part of which is as follows:

"The Commission shall establish and enforce fair and reasonable regulations for appointments, promotions and demotions based upon rating of efficiency and fitness and for terminations for cause."

We understand that respondents rely entirely on the provisions of the law so quoted, the provisions of Section 238.07, Florida Statutes 1941, relating to the retirement of teachers and various other State and Federal Civil Service laws affecting age retirement to support their general retirement policy adopted October 27, 1947.

The Legislature undoubtedly has authority to set up a general retirement policy for all employees similar to that for teachers previously alluded to, but Section 443.12 (4), quoted and relied on here, does not attempt to do so. It deals entirely with "appointments, promotions and demotions based upon rating of efficiency and fitness and for terminations for cause." The primary reliance of respondents here is on the phrase "terminations for cause," but when read with the context these words refute the interpretation proposed for them. Removal for cause or terminations for cause is employed fre-

---

[1] It is admitted that the Federal Employment Service was set up under an Act of Congress known as the Wagner-Peysen Act (48 Stat. 114-29 USCA 49 (c), one of the provisions of which was that in order to secure the benefits thereof the respective states shall create a state agency clothed with power to cooperate with the Federal Employment Service. The legislature of Florida created the Florida Industrial Commission, (Chapter 18,402, Acts of 1937, Section 443.12 (4), Florida Statutes 1941, and authorized it to accept all Federal funds and cooperate with the Federal Employment Service in the administration of the Wagner-Peysen Act. One of the conditions for participation in Federal Funds was the creation of a Merit System to govern the personnel of the State Employment Service.

quently in statutes and constitutions relating to the removal of officers and employees and has a well settled connotation. It imputes removal or termination for misconduct, some violation of the law or delict of duty on the part of the officer or employee affected. Stringer v. Stringer, 273 Ky. 251, 116 S.W. (2) 324, 327. American Jurisprudence, Vol. 43, Public Officers, Section 205, same subject R.C.L. Vol. 22, Section 284, Words and Phrases, Permanent Edition Vol. 36, page 865, McChem on Public Offices, page 286 et seq. and many other text books and decisions support this view and a wide search of authorities reveals no holding to the contrary.

This holding is not alone supported by universal authority, it is supported by logic and good conscience. "Terminations for cause" is a very different matter from retirement for age. If the legislature has prescribed no policy for retirement, then retirement is the voluntary act of the person who retires and cannot be coerced. We do not find a word in Chapter 18,402, Acts of 1937, or other statutes relied on, that can be remotely construed as authorizing the Commission to prescribe any policy retiring employees from the service for age alone.

Respondents contend that the real purpose of a compulsory retirement policy is to create a more efficient public service, but we think it contemplates more than this. Efficient public service is secured by encouraging a high standard of qualification on the part of the employee, insuring his tenure and a chance for promotion. One attaining this status acquires an interest in his job that he may be deprived of for cause, but not on account of his age alone when not so provided. When secured under the Merit System, one's right to a job is akin to his right to land or other property. The legislature of course, may impose reasonable age retirement but the Commission has no authority to do so unless in terms so authorized. Administrative agencies, when empowered to do so, may make and enforce regulations to carry out powers definitely conferred on them, but they are not permitted to do more. The legislature cannot clothe them with more, neither may they assume to do more.

Another element refuting respondent's contention that in the instant case the Commission is acting "for cause," is that

"terminations for cause" generally contemplate notice and a chance to be heard somewhere along the line, but in this case every factor of due process was skipped and relator was given the bounce without recourse. This was not in keeping with the courtesy that our form of democratic society accords the individual. "Fair and reasonable" and "efficiency and fitness" were the criteria that respondents had to guide them.

So we are driven to the conclusion that the regulation complained of was void and unenforceable because respondents were without power to promulgate it, hence the return to the alternative writ should be quashed and the motion for peremptory writ granted.

It is so ordered.

CHAPMAN, SEBRING and ADAMS, JJ., concur.