This is a direct appeal from the decision of the District Court of Appeal, Fourth District, in Williams v. Turrentine, 266 So.2d 81.
A declaratory action was filed in circuit court by John W. Turrentine to determine *Page 574 
the validity of a lease between the City of West Palm Beach and a private corporation, West Palm Beach Marina, Inc. George S. Williams, as a resident and taxpayer, was allowed to appear as intervenor.
Plaintiff sought a declaratory judgment holding that a lease of certain city-owned property to a private corporation for profit would be invalid. The plaintiff Turrentine and defendant City of West Palm Beach filed motions for summary judgment. The trial court entered an order on February 1, 1971, containing the following:
 "The property consists of a marina, gasoline service station, restaurant and metered parking lot, all owned or used by the City in a proprietary, rather than governmental, capacity. The City operates the marina and rents out boat space to the public in all material respects as a private marina. The gasoline service station is leased and operated by an oil company. The restaurant is leased and operated by a private individual. The City operates the metered parking lot. None of the property is being used or devoted to the carrying on of ordinary city business.
 "Plaintiff contends that statutory authority is needed for a municipality to lease the property in question, and that under Sec. 167.77, Florida Statutes [F.S.A.], such authority is granted to the City of West Palm Beach only under certain conditions set forth therein. The City, however, shows that it is specifically empowered by statute to dispose of its property. Its Charter grants very broad powers, permitting `sale, exchange, lease, mortgage, pledge, or other encumbrance of any property.' It may be observed, further, that municipalities under the general law in other jurisdictions have similar flexibility in this regard. In 38 Am.Jur., Municipal Corporations, Sec. 489, it is stated:
 "`A municipal corporation is generally held to have the power to lease property which it is authorized to own in a private or proprietary capacity.'
 "The court finds that there are no material issues of fact; that the City is entitled to prevail in its motion for summary judgment, and the same is hereby granted."
Intervenor Williams contended that the lease was against public interest and invalid for that reason. The Court granted his request to submit affidavits and a brief. Thereupon, the following final judgment was entered:
 "The court held in its order of February 1, 1971, that the City of West Palm Beach was authorized by law to enter into the lease which is the subject of this suit and granted the motion for summary judgment filed by the City regarding the issues raised by the plaintiff, Turrentine. The Court reserved for further consideration the contention of the intervenor that the lease is invalid as being contrary to the public interest so that the parties could file affidavits and briefs.
 "It appears from the brief and attached documents filed by Intervenor that the primary and most serious objection of the intervenor to the lease is that it provides for the filling of Lake Worth. The objective of the intervenor to prevent the filling of Lake Worth has been realized in an amendment to the lease during the pendency of this suit, wherein the lessee waived all rights to fill Lake Worth. Intervenor, having prevailed on the filling of the lake, also objects to the lease on the ground that it is contrary to the public interest in that it will deprive the public of the waterfront view and the use of the land.
 "Intervenor points out that our courts in the recent cases of Seadade Industries, Inc. v. Florida Power Light Co., [Fla.], 245 So.2d 209, and Coastal Petroleum Company v. Secretary of Army of U.S., 315 F. Supp. 845 (S.D.Fla. 1970), have taken ecological factors into consideration, *Page 575 
and contends the principles involved in those cases apply to this lease.
 "In Seadade the utility company instituted a condemnation proceeding in order to excavate a canal which would carry water from its plant to a natural body of water. Before proceeding with the project, the utility had to obtain approval from local governmental agencies which had not yet been given, and the court simply held that the condemning authority had to show a probability that it would obtain approval and also that irreparable harm from thermal pollution would not result from the discharge of waters into a bay; the court upheld the principle that in condemning property a utility must consider the public interest.
 "In Coastal Petroleum the plaintiff asserted the right to extract limestone from the bottom of Lake Okeechobee under a lease. The evidence in the case showed that the damage to the bottom of the lake far outweighed the private interests of Coastal to mine the lake, and the court held that since Coastal
could be compensated by an award of money damages for lost profits, it would decline to enforce the lease.
 "This court recognizes and endorses the principles followed in the above cases. However, there is little similarity between the facts of those cases and the facts in the present case, particularly since there no longer exists any issue as to filling of the lake.
 "The power of the courts to interfere with the will of the legislative body of a city is quite limited except where an ordinance is arbitrary or unreasonable. In City of Miami v. Kayfetz, 92 So.2d 798, 801, our Supreme Court stated:
 "`Where an ordinance is within the power of the municipality to enact it is presumed to be reasonable, unless its unreasonable character appears on its face. State ex rel. Harkow v. McCarthy [126 Fla. 433, 171 So. 314], supra; State ex rel. McAuley v. York, 1925, 90 Fla. 625, 106 So. 418. And when the authority to enact the ordinance does fairly appear, wide latitude is allowed in its exercise, where it does not appear that there has been, in action taken, an abuse of authority or a violation of organic or fundamental rights. State ex rel. Simpson v. Ackerly, 1951, 69 Fla. 23, 67 So. 232. If reasonable argument exists on the question of whether an ordinance is arbitrary or unreasonable, the legislative will must prevail. State ex rel. Skillman v. City of Miami, 1931, 101 Fla. 585, 134 So. 541.'
 "The court is asked to decide whether the decision of the city officials that the public interest would best be served by private development of the land constitutes an abuse of discretion because it deprives the public of the waterfront view and the use of the land. It is not the function of the court to pass upon the wisdom of the city officials, or to substitute its opinion for theirs, but only to determine if their action was unlawful. The evidence offered fails to establish that the action of the City was in violation of the principles set forth above, and accordingly the lease, the amendment to the lease, and the ordinances relating thereto are valid."
Intervenor Williams, upon appeal, contended that the lease executed by the City violated Fla. Const., art. VII, § 10, F.S.A., which provides in part:
 "Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; . . . ."
The District Court of Appeal construed this constitutional provision as restricting activities and functions of municipalities to that of government and to forbid municipalities *Page 576 
from engaging directly or indirectly in commercial enterprises for profit.
The District Court of Appeal initially and directly construed a provision of the State Constitution and we have jurisdiction. Fla. Const., art. V, § 3(b)(1), F.S.A.
The District Court of Appeal relied primarily upon decisions involving the pledging of municipal, district, or state credit through the issuance of bonds and decisions which held a municipality could not pledge its credit in aid of a private corporation absent a showing that the primary purpose was a public purpose. However, the question involved here is whether municipalities can lease public lands for private uses when the lease is not coupled with the issuance of bonds or with the acquisition of land by purchase or eminent domain.
It is well settled that municipalities may constitutionally acquire land by purchase or by power of eminent domain and then lease that land for public use, Gate City Garage v. City of Jacksonville, 66 So.2d 653 (Fla. 1953), or may use the proceeds of municipal bonds to build improvements to be leased for public use, State v. City of Miami, 72 So.2d 655 (Fla. 1954).
Also, a municipality may not constitutionally acquire land by purchase or by power of eminent domain and then lease that land for a private use. Adams v. Housing Authority of City of Daytona Beach, 60 So.2d 663 (Fla. 1952), nor may municipalities use the proceeds of municipal bonds to build improvements to be leased for a private use, State v. Town of North Miami, 59 So.2d 779
(Fla. 1952).
Because the constitution requires that bonds be issued, public funds be spent and the power of eminent domain be exercised for public uses only, any lease agreement which requires that one of the above powers be exercised for a private use would necessarily be void. However, when none of the above powers need be exercised in order to proceed to the complete execution of the lease agreement, municipalities, when holding the legislative authority to do so, can lease public land for private uses. Bannon v. Port of Palm Beach District, 246 So.2d 737 (Fla. 1971). Fla. Stat. § 167.77(1), F.S.A., which gives general legislative authority to all municipalities, reads as follows:
 "Whenever it has been determined by the governing body of a municipality that any of its real property may not be needed for current or future municipal use, said property may be sold or leased for nonpublic uses to the highest and best bidder for the particular use the municipality deems to be the highest and best use, for such length of term and conditions, as the governing body may in its discretion determine. The execution and delivery of said lease shall be subject to the same conditions and approvals which may be required by existing charter provisions of the municipality or special acts applicable thereto for the sale of property by deed. When the governing body has determined that its real property is not needed for municipal use, said property may be sold, but only to the highest and best bidder after notice thereof is published once a week for at least two weeks in some newspaper of general circulation in the municipality, calling for bids for the purchase of the real estate so advertised and specifying the terms of purchase, including the minimum price if such has been set."
Fla. Stat. § 167.77, F.S.A., emanated from a decision of this Court in City of Clearwater v. Caldwell, 75 So.2d 765 (Fla. 1954), where Clearwater was attempting to lease a parcel of public land to a private individual for fifty years to be developed into a hotel-apartment complex. Upon suit instituted by taxpayers, the Circuit Court held that the City did not have the power to lease the property and enjoined the City from executing the lease agreement. The sole issue decided by this Court was whether the City of Clearwater had the power to *Page 577 
lease public land to be used for a private use. In affirming the lower court, this Court said:
 "We do not find that the City of Clearwater has been granted the authority by the Legislature, directly or indirectly, to construct and operate a hotel or apartments, or that the same has been declared by the Legislature to be for a municipal purpose." 75 So.2d 765, p. 766.
The original version of Fla. Stat. § 167.77, F.S.A., was enacted as Ch. 57-9, Laws of Florida, wherein the Legislature made the following finding:
 "Whereas, certain recent decisions of the Supreme Court of Florida have indicated that while municipalities generally have the power to sell real property by deed for any purpose, the power to lease such property for nonpublic purposes must be specifically granted, and,
 "Whereas, there are many instances where it may be more advantageous for municipalities to lease their property which may not be presently needed, but which may be essential at some future time because of the forseeable growth of such municipalities, and for other needs that may be brought about by changes in the requirements and demands for municipal services, and,
 "Whereas, municipalities may own property improved with buildings thereon which may not be presently needed but which could be advantageously leased to new industries and similar enterprises and thus contribute to the general welfare of the inhabitants of such municipalities, and,
 "Whereas, it is hereby found and determined that the use by municipalities of such rentals for public purposes is a public use the same as the use of the proceeds from the sale of real property by municipalities." (Emphasis supplied.)
Fla. Stat. § 167.77, F.S.A., is sufficient authority to allow municipalities to lease public lands for private uses, provided the lease does not violate the Constitution by being coupled with the issuance of bonds or the acquisition of lands by purchase or eminent domain.
In addition to the general authority, the City Charter of West Palm Beach (Fla. Laws, Ch. 65-2381) expressly grants to the City the power to dispose of property by lease. Section 1.04 of the Charter contains the following:
 "The city shall have the following enumerated powers, subject to the limitations set forth herein: (1) To acquire and dispose of any type of property or interest therein, within or without the city; . . . ."
The method of disposing of property is prescribed in Section 1.03(4) of the charter, which contains the following:
 "The power to dispose of property shall embrace sale, exchange, lease, mortgage, pledge, or other encumbrance of any property, . . . provided . . . each lease of real property by the city as lessor for a period exceeding five years shall require approval by unanimous vote of the membership of the city commission or subsequent approval by vote of the city electors in a referendum election called and held as provided hereby."
It therefore appears that the City of West Palm Beach had both general statutory authority and specific authority in its Charter to lease the subject property.
It is interesting to note that in Bannon v. Port of Palm Beach District, 246 So.2d 737 (Fla. 1971), this Court considered the question of whether or not a Port District had the power to lease its artificial island to a private corporation for private development at no public expense. This Court held that under the provisions of Fla. Stat. §§ 315.03(9) and 315.03(14), F.S.A., the *Page 578 
District had such authority and that these statutes did not violate the constitutional prohibition against lending of credit of the State for a private purpose where no bonded indebtedness or monetary obligation of any kind attached to the Port District as a result of the lease. This statutory grant of power was similar to that given to municipalities by Fla. Stat. § 167.77, F.S.A. This Court in its opinion said:
 "The District, by virtue of the lease agreement, did not become a joint owner or stockholder of the private tenant, nor did it lend, obligate or in any manner encumber its credit to the advantage of the tenant. Contrary to the allegations of appellants, the lease does not operate to guarantee that the tenant will inherit the `tax-free' status our Legislature has bestowed upon property held by the Port District. . . .
 "In the case sub judice, the District has no financial responsibility and if all failed for the corporate tenant, the District would not bear any responsibility or obligation to the creditors nor would its ownership of the land be committed for such. Its interest and credit remain free from attachment and neither the spirit nor the letter of Article VII, Section 1, Florida Constitution of 1968 has been violated." 246 So.2d 737, pp. 740-741.
As noted above (Ch. 57-9, Laws of Florida), the Legislature has determined that the lease of public lands for private uses is a valid public purpose and such a finding should not be disturbed absent a showing that it is arbitrary and unfounded. State v. Daytona Beach Racing Rec. Fac. Dist., 89 So.2d 34 (Fla. 1956). In fact, it would be beneficial in many instances to lease surplus public property for non-public purposes so that the citizens and taxpayers would realize some tax relief resulting from the income. As stated by the trial judge, it is not the function of the Court to pass upon the wisdom of the City officials, or to substitute its opinion for theirs, but only to determine if their action was unlawful.
In summary, we hold that where bonds are not issued, public funds are not spent, and the power of eminent domain is not exercised in furtherance thereof, a municipality can lease public land for private uses in accordance with legislative authority.
The decision of the District Court of Appeal is reversed and the cause is remanded with instructions to affirm the judgment of the trial court.
It is so ordered.
CARLTON, C.J., and ROBERTS, BOYD, McCAIN and DEKLE, JJ., concur.
ERVIN, J., concurs in part and dissents in part with opinion.