Mr. Michael A. Fogarty Attorney for the Tampa Sports Authority
QUESTION:
Can the Tampa Sports Authority lawfully enter into a license agreement with a private entity whereby that entity, for a stated consideration, would be permitted to use, as private parking facilities, property owned by the Tampa Sports Authority during such periods when said property is not needed for sports and/or recreational events?
SUMMARY:
The Tampa Sports Authority lacks the requisite statutory authority necessary to lawfully enter into a lease or license agreement with a private entity whereby that entity would be permitted to use, as private parking facilities, authority property during periods when such property is not needed for sports and/or recreational events.
According to your letter, The Tampa Sports Authority has received a proposal from a private entity requesting that the authority license the party to use certain of the authority's parking areas for nonpublic purposes during times when sporting events are not scheduled. The areas would be used for private parking purposes and the proposed license would be for a given consideration. Against this factual background, you have asked for my opinion on whether The Tampa Sports Authority can lawfully enter into a license agreement which would effectively rent authority property to a private entity when such authority property is not in use for scheduled sports or stadium events.
The Tampa Sports Authority was created pursuant to special law as `a public agency politic and corporate,' for the specialized purpose of `planning, developing and maintaining a comprehensive complex of sports and recreation facilities for the use and enjoyment of the citizens of Tampa and Hillsborough County.' Ch. 65-2307, Laws of Florida, as amended. The powers of the Sports Authority must be interpreted and construed in reference to the purpose of the authority, and if reasonable doubt exists as to whether the authority possesses a specific power, such doubt must be resolved against the authority's exercise of that power. Cf. City of Clearwater v. Caldwell, 75 So.2d 765 (Fla. 1954); Gessner v. Del-Air Corp., 17 So.2d 522 (Fla. 1944); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974); AGO 076-37. The rules governing municipalities, public quasi-corporations and agencies of the State in such regard apply with equal force and effect to all statutory entities. See also
AGO's 073-374, 074-169, 076-37; City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493 (Fla. 1973). Therefore, The Tampa Sports Authority possesses only such powers as are expressly given, or necessarily implied because essential to carry into effect those powers expressly granted. See State v. Smith,35 So.2d 650 (Fla. 1948); Edgerton v. International Company, Inc.,89 So.2d 488 (Fla. 1956); AGO 074-169. It should be noted that, generally, whenever a lease of public lands for private uses is not coupled with the issuance of bonds or the expenditure of public funds, or with the acquisition of land by purchase or eminent domain and the public body possesses legislative authorityto do so, it can lease public land for private uses, but not otherwise. City of West Palm Beach v. Williams, 291 So.2d 572
(Fla. 1974).
In this instance, The Tampa Sports Authority lacks the express grant of legislative authority necessary to effectively lease or license its parking areas to a private entity for nonpublic uses. Section 4(j) of ch. 65-2307, as amended by ch. 75-515, Laws of Florida, authorizes the authority to `lease, rent or contract forthe operation of any part of any of the sports and recreational facilities of the authority' (emphasis supplied.); section 4(j) also provides that where `a long term lease, rent or contract is involved there must be reasonable public notice, bids and hearing.' A long term lease, rent or contract as used in subsection (j), as amended, is defined as `any possession or right to use or occupy any part of the sports and recreational facilities of the authority during any one (1) calendar year for more than thirty-one (31) days or any part of thirty-one (31) different days.' Section 4(n) of ch. 65-2307, empowers the authority to `enter into all contracts and agreements necessary or incidental to the performance of the duties imposed and the execution of the powers granted by (the) act' (emphasis supplied.); and s. 4(p) authorizes the authority `to do all acts or things necessary or convenient to carry out the powersexpressly granted in (the) act.' (Emphasis supplied.) However, ch. 65-2307, as amended, nowhere expressly or by necessary implication authorizes the authority to lease or otherwise license its property to private parties for private purposes or uses. Section 9 of ch. 65-2307, as amended by ch. 67-2112, Laws of Florida, provides that the described property of the authority `shall be used for the sports, recreational and park purposes provided forby this act' (emphasis supplied.), and shall not be conveyed, mortgaged, leased, rented or otherwise encumbered in any manner
without public notice, public hearing and the consent of the Mayor and the City Council of the City of Tampa and the Board of County Commissioners of Hillsborough County, provided that notice, hearing and consent concerning leases and rentals shall be necessary only with respect to long term leases and rentals as defined in s. 4(j). However, that section does not purport to empower the authority to lease or license its property to private parties for nonpublic uses or purposes; at best, it only conditionally authorizes the lease or rental of the authority's property for the statutorily prescribed uses and purposes. Neither s. 9 of the act nor any other provision thereof authorizes the authority to lease or license its property to private parties for private uses or benefit or for any other public or nonpublic uses or purposes not expressly or by necessary implication provided for by *3657 the authority's enabling statute, as amended.
Prepared by: William D. Hall, Jr., Assistant Attorney General