Mr. D. Byron King Attorney Florida Inland Navigation District Suite 308 137 East Forsyth Street Jacksonville, Florida 32202
Dear Mr. King:
This is in response to your request for an opinion on substantially the following questions:
 1. DOES THE FLORIDA INLAND NAVIGATION DISTRICT HAVE THE AUTHORITY TO EXPEND DISTRICT MONIES TO FUND A SPECIAL FLORIDA STATE MARINE PATROL TROOP IN ORDER TO PUT TWO ADDITIONAL MARINE PATROL OFFICERS IN EACH OF THE ELEVEN COUNTIES ENCOMPASSING THE DISTRICT BOUNDARIES?
 2. DOES THE NAVIGATION DISTRICT HAVE THE AUTHORITY TO PROVIDE FUNDS BOTH ON A MATCHING BASIS AND AS AN OUTRIGHT GRANT FOR PUBLIC INFORMATION AND EDUCATION FOR SUCH THINGS AS MAPS, BROCHURES, TELEVISION AND RADIO COMMERCIALS AND PROGRAMS, SAFETY PROGRAMS, MARINA LOCATIONS, COAST GUARD REGULATIONS, MANATEE PROTECTION PROGRAMS, FISHING REGULATIONS, OR WHATEVER ELSE IS APPROVED BY THE BOARD OF COMMISSIONERS?
 3. DOES THE NAVIGATION DISTRICT HAVE THE AUTHORITY TO ESTABLISH A MATCHING FUNDS PROGRAM FOR CITIES AND COUNTIES, TO IMPROVE WATERWAY-RELATED FACILITIES, RECREATIONAL OR OTHERWISE?
 4. DOES THE NAVIGATION DISTRICT HAVE THE AUTHORITY TO REGULATE THE USE OF WATERCRAFT ON THE INLAND NAVIGATION WATERWAY?
The Florida Inland Navigation District (hereinafter FIND) was created by Ch. 12026, 1927, Laws of Florida. In 1931, the Legislature amended and reenacted in toto Ch. 12026. See, Ch. 14723, 1931, Laws of Florida. FIND is a special taxing district created for the purpose of purchasing a navigable waterway through the described area of the district and acquiring by purchase or eminent domain the necessary rights-of-way, land, easements, areas for deposit of dredged material, riparian rights and property rights of every description necessary for the construction and maintenance of the inland waterway. See, title, ss 1, 6, 7, 8 of Ch. 14723. In order to finance the purposes of the navigation district, the governing board of commissioners was, and is, authorized to levy taxes, accept gifts and donations, and borrow money. See, ss 7, 8, 11 of Ch. 14723. Your letter of inquiry states that the board of commissioners is interested in adopting a new philosophy for the district and a supplemental memorandum from a commissioner indicates a desire to plot a new course because the district's "original purposed [sic] and goals have become a trifle obsolete," and that the commission "should step back and examine ourselves, as with this tremendous amount of [taxing] power, we could do a tremendous amount of good for the people of the state of Florida." Id. at p. 2.
QUESTION ONE
Your first question regarding whether the board of commissioners is authorized to expend district monies in order to fund a special marine patrol troop is answered in the negative.
FIND is a special taxing district which was created by the state Legislature to levy taxes on real property within the district for the purpose of acquiring rights-of-ways and easements for the intracoastal waterway and areas of land for the deposit of dredged material in order to keep the waterway navigable. The general rule of law applicable to a special taxing district such as FIND, as stated by the courts and this office, is that a special district possesses only such power and authority as has been expressly granted by law or necessarily implied therefrom in order to carry out an expressly granted power. See, e.g., Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District,82 So. 346 (Fla. 1919); State v. Smith, 35 So.2d 650 (Fla. 1948); Edgerton v. International Co., 89 So.2d 488 (Fla. 1956); AGO's 82-89, 76-200, 74-169, 73-374 and 69-130. In AGO 82-89, this office concluded that the Mat'lacha and Pine Island Fire Control District, in the absence of any statute so providing, was not authorized by law to borrow money for construction purposes. Although the special act creating that district authorized the governing body of the district to purchase, own and dispose of property and further provided that the special act was to be liberally construed to promote the purposes for which the district was created, it did not expressly authorize the district to borrow money; such power could not, that opinion concluded, be implied. See also, AGO 76-200, which concluded that the Captiva Fire Control District was not expressly or impliedly authorized by law to borrow money to construct a firehouse building. The general rule regarding implied powers is that while an express power duly conferred by statute may include the implied authority to use means necessary to make the express power effective, such implied authority may not warrant the exercise of a substantive power not conferred. See, Molwin Investment Co. v. Turner, 167 So. 33
(Fla. 1936); Southern Utilities Co. v. City of Palatka, 99 So. 236
(Fla. 1923). See also, Florida State University v. Jenkins,323 So.2d 597 (1 D.C.A.Fla., 1975) (power to be implied must be essential in order to carry out expressly granted power or duty imposed); Haines City v. Certain Lands, Etc., 178 So. 143
(Fla. 1937) (power sought to be implied from express grant of power must be necessary, indispensable or essential, not merely convenient, to the attainment of the declared objects and purposes). See also, 73 Am.Jur.2d Statutes s 311 (1974).
I have examined the laws pertaining to FIND and their grants of authority to this special district. Nowhere is FIND authorized to expend monies to fund a special state marine patrol troop. Nor can I discern any express duty or responsibility for which such implied authority is necessary, indispensable or essential in order to carry out such express purpose or duty. Furthermore, it is a general rule of law that taxes raised for the purposes of one governmental unit may not be employed to accomplish the performance of duties and functions of another level of government.
See, Okaloosa County Water and Sewer District v. Hilburn,160 So.2d 43 (Fla. 1964); City of Lynn Haven v. Bay County,47 So.2d 894 (Fla. 1950). In Prescott v. Board of Public Instruction of Hardee County, 32 So.2d 731, 733 (Fla. 1947), the Florida Supreme Court stated that "State taxes must be expended for state purposes; that county taxes must be expended for the purposes of the county; and that district taxes must be expended for the purposes of the district; and that the taxes of one unit cannot be expended for the purposes of another unit." See generally, 85 C.J.S. Taxation s 1057b. (1954).
While the concern on the part of some of FIND's commissioners to adopt a new philosophy and set a new course, and specifically to fund a special troop of the Florida State Marine Patrol, is commendable, it is my opinion that no such authority exists expressly or impliedly, for the district to fund such a troop. Special districts in Florida such as FIND are creations of the Florida Legislature, established and empowered for certain statutorily prescribed purposes and any new courses or purposes must be adopted or provided for by the State Legislature, not by the governing body of such a special district whose duties, responsibilities and authority is limited to that specified in the statutes.
QUESTION TWO
The same principles of law must be applied to your second question concerning the authority of the district to provide funds to "other interests" or agencies both on a matching basis and as an outright grant, for public information and education for such things as maps, brochures, television and radio commercials and programs on the subjects set forth in your question. This information and education would include such things as safety programs, marina locations, Coast Guard regulations, manatee protection programs, fishing regulations, and whatever else is approved by the board of commissioners. It is a fundamental principle of law that funds raised by taxation for one purpose cannot be diverted to another in the absence of legislative authority. It is a violation of official duty in handling public funds for those charged by law with the lawful payment thereof to divert the funds to a purpose contrary to that for which they were raised. See, Supreme Forest Woodmen Circle v. Hobe Sound Co.,189 So. 249 (Fla. 1939); Keefe v. Adams, 143 So. 644 (Fla. 1932). See also, Oven v. Ausley, 143 So. 588 at 589 (Fla. 1932) (it is a violation of an elemental principle in the administration of public funds for those who are charged with the trust of their proper expenditure not to apply such funds to the purposes for which they were raised; when funds are raised by taxation, for one purpose they cannot be diverted to some other purpose without legislative authority).
Pertinent to your specific question, s 1, Ch. 17020, 1935, Laws of Florida, provides
 [t]hat the Board of Commissioners of Florida Inland Navigation District, a special taxing district under the laws of the State of Florida, be, and it is hereby, authorized and empowered to expend funds of the District, whether obtained by taxation, loan or otherwise (within the power and authority now vested in said Board and/or District for such purpose by law), for publicizing the completion by the United States of America of the Intracoastal Waterway from Jacksonville to Miami, Florida, and its present availability to water craft and to print and distribute information as to the route, channel, available depth and utility of said Intracoastal Waterway and such other information and data as may, in the opinion of the Board of Commissioners of said District, be desirable, useful or attractive to give full information regarding said waterway and/or to promote its use in navigation by water craft of all kinds. (e.s.)
This provision authorized the board to publicize the completion of the Intracoastal Waterway as "a public purpose of great benefit to the residents and taxpayers of said Florida Inland Navigation District." This provision appears to authorize a one time expenditure of public funds for the publicizing of the completion of the waterway and its availability to watercraft and information regarding the waterway's route, channel, available depth and utility along with such other information data as is desirable or useful for the use of the waterway for navigation. However, even if this provision authorizes an ongoing or periodic expenditure, it would not encompass or countenance the expenditure or provision of district funds to "other interests" or agencies, either as outright grants or as matching funds, for the types or range of information or programs posed in your second question, and certainly no authority exists for the expenditure of district funds for "whatever else is approved by the Board of Commissioners." See, supplemental memorandum prepared by Commissioner Earman.
It is appropriate at this point to respond to an ancillary question posed in your inquiry concerning the scope of the term "promote" as used in Ch. 17020, 1935, Laws of Florida. You state in supplemental materials that it has been contended that the word "promote" is "synonymous with `facilitate' and is not limited to advertising uses and benefits of the waterway." The word "promote" is defined in Black's Law Dictionary 1379 (Rev. 4th ed. 1968) as follows: "To contribute to growth, enlargement or prosperity of; to forward; to further; to encourage; to advance." See also, 34 Words and Phrases, p. 556. In AGO 75-120, this office stated that "`[t]o promote and encourage' is not the equivalent of `to finance.'" Thus, the language referred to in Ch. 17020, 1935, Laws of Florida, does not authorize the expenditure of district funds for the informational and educational programs in question. This conclusion is bolstered by the legislative statement of intent contained in the preamble to Ch. 17020. There it is stated that "it is believed that proper publicity to and dissemination of information about the completing of the Intracoastal Waterway and its present availability for use by water craft of all kinds generally using such waterways, will expedite the increased use of the canal and benefit to the people and land along the" Intracoastal Waterway. (e.s.) The intent expressed in the preamble and body of this act does not serve as a legislative carte blanche for the navigation district's governing board to expend district funds for whatever in the board's discretion is a useful and proper purpose. A search of the laws relating to the navigation district does not reveal any other authority for such expenditures, and therefore I am constrained to conclude that the board is limited to expending funds for publicizing the completion of the waterway along with information concerning its route, channel, available depth and utility.
QUESTION THREE
Your third question is likewise answered in the negative. I must reiterate that the Florida Inland Navigation District is a special district whose powers are limited to those set forth in the statutes relating to the district and whose functions and purposes are determined by the State Legislature. I discern no authority contained in the Laws of Florida for the district to establish a matching funds program for cities and counties to improve waterway-related facilities, recreational or otherwise, and therefore must conclude that the district is not so empowered. See, Edgerton v. International Co., supra; State v. Smith, supra; Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, supra; AGO's 82-89, 76-200, 74-169.
QUESTION FOUR
Your next question whether the navigation district has the authority to regulate the use of watercraft on the Intracoastal Waterway is answered in the negative.
The Florida Inland Navigation District was originally created by Ch. 12026, 1927, Laws of Florida. Section 22 of that act provided: "Said Board of Commissioners is hereby authorized and empowered to regulate the speed and operation of all watercraft or boats of any kind plying on or using the said waterway or waterways." As stated earlier, in 1931 the Legislature amended and reenacted in toto Ch. 12026 by the adoption of Ch. 14723, 1931, Laws of Florida. The provision relating to the regulation of watercraft in the earlier act was deleted from this subsequent legislation. The general rule of statutory construction is that a law covering the entire subject matter of an earlier act, intended as a revision of or substitute for the earlier act, operates to repeal such act. See, State v. Stoutamire, 123 So. 834 (Fla. 1929). See also, Orange City Water Co. v. Town of Orange City, 255 So.2d 257 (Fla. 1971) (Legislature's complete revision of a subject is an implied repeal of earlier acts dealing with the same subject unless the contrary intent is clearly shown); Realty Bond Share Co. v. Englar,143 So. 152 (Fla. 1932); State v. Rose, 122 So. 225 (Fla. 1929). And see, 82 C.J.S. Statutes ss 294, 295 (1953). And cf., State v. County Commissioners of Duval County, 3 So. 193 (Fla. 1887) (where a section, expressly amendatory of another section, purports to set out in full all it is intended to contain, any matter which was in the original section, but is not in the amendatory section, is repealed by the omission).
The title to Ch. 14723, 1931, Laws of Florida, provided that the earlier act, Ch. 12026, was "amended and re-enacted in toto to read as follows[.]" This language expresses a legislative intent that the new or subsequent act, Ch. 14723, was to supersede or replace the earlier act, Ch. 12026, in its entirety and serve as a complete revision thereof. Applying the above rule of statutory construction and consistent with the legislative intent expressed in the title to the later act, Ch. 14723, it is my opinion that s 22 of Ch. 12026, 1927, Laws of Florida, was repealed by omission by the 1931 reenactment, Ch. 14723, and that therefore the navigation district has had no power or authority to regulate the speed and operation of watercraft on the Intracoastal Waterway since 1931.
In summary, I am therefore of the opinion, unless and until judicially or legislatively clarified or determined to the contrary, that the Florida Inland Navigation District does not have statutory authority to expend district monies to fund a special marine patrol troop, to provide funds on a matching basis and as outright grants for public information and educational programs — publicizing is limited to information concerning the completion of the Intracoastal Waterway along with information concerning its route, channel, available depth and utility, to provide a matching funds program for cities and counties to improve waterway-related facilities, recreational or otherwise, or to regulate the use of watercraft on the inland navigation waterway.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General