Mr. Lawrence C. Turk Attorney South Trail Fire Protection and Rescue Service District 4223 Del Prado Boulevard Cape Coral, Florida 33904
Dear Mr. Turk:
This is in response to your request for an opinion on substantially the following question:
 MAY THE SOUTH TRAIL FIRE PROTECTION AND RESCUE SERVICE DISTRICT ENTER INTO A CONTRACT WITH LEE COUNTY TO PROVIDE FIRE PROTECTION SERVICES ON BEHALF OF THE COUNTY TO MUNICIPAL SERVICE TAXING UNITS WHICH LIE OUTSIDE THE DISTRICT'S BOUNDARIES?
The South Trail Fire Protection and Rescue Service was created in 1976 as a special taxing district located in Lee County. See, Ch. 76-412, Laws of Florida, as amended by Chs. 81-414, 81-418 and 81-419, Laws of Florida. Section 4 of Ch. 81-419, Laws of Florida, amending s 10(2), Ch. 76-412, Laws of Florida, provides that the district board of commissioners, as the district's governing body, is authorized and empowered to "buy, own, lease, and maintain fire protection and rescue services within the district, and to purchase, acquire by gift, own, lease and dispose of fire protection and rescue service equipment and property, real and personal, that the board may from time to time deem necessary or needful to carry out its purposes and functions within the district." See, s 1, Ch. 81-418 Laws of Florida, amending s 5, Ch. 76-412, Laws of Florida, to provide that the board of commissioners is authorized to levy a millage tax, not to exceed $2.25 per $1,000 of net taxable assessed valuation, against the taxable real estate within the district to provide funds for the purposes of the district. And see, s 9, Ch. 76-412 authorizing the board to borrow money and to issue revenue anticipation certificates; and s 4, Ch. 81-419, Laws of Florida, amending s 10(1), Ch. 76-412, Laws of Florida, providing that no funds of the district shall be used for any purpose other than the administration of the district or the care, maintenance, operation and purchase of fire protection and rescue service equipment or station and the payment of salaries of district personnel as the board deems necessary for the operation and effectiveness of the district.
This office and the courts of this state have previously stated that special districts, as creatures of statutes, possess only such powers and authority as have been expressly granted by statute or necessarily implied therefrom in order to carry out an expressly granted power. See, e.g., Forbes Pioneer Boat Line v. Board of Com'rs of Everglades Drainage Dist., 82 So. 346
(Fla. 1919); State ex rel. Hathaway v. Smith, 35 So.2d 650
(Fla. 1948); AGO's 82-89, 80-55, 76-200, 74-169 and 73-374. In AGO 83-76, this office was asked whether the South Trail Fire Protection and Rescue Service District was authorized to enter into a binding agreement with a private developer to render fire protection and rescue services to his development which was located outside of the district's boundaries. This office concluded that the special fire control district lacked the necessary statutory authority to enter into such a contract. While s 2(3), Ch. 76-412, authorizes the district to render fire protection and rescue services to communities adjacent to the district's boundaries and other places as from time to time may be desirable in the discretion of the chief or other governing officials of the district, this office was of the opinion that the foregoing provision appears to contemplate that such services will be rendered on an occasional and permissive basis and that the owners or inhabitants of such adjacent lands and other places are not granted any right to receive such services from the district.
You refer to s 125.01(1)(p) and (g), F.S., and s 125.0101, F.S., and inquire whether the foregoing statutory provisions offer the necessary authority for the district to enter into such a contractual arrangement with the county. Section 125.01(1)(p), F.S., authorizes the legislative and governing body of a county to enter into agreements with other governmental agencies within or outside the boundaries of the county for the joint performance, or performance by one unit in behalf of the other, of any of either agency's authorized functions. See also, s 125.01(q), authorizing the county to create, merge or abolish municipal service taxing or benefit units for any part or all of the unincorporated area of the county within which may be provided, inter alia, fire protection and other essential facilities and municipal services from funds derived from service charges, special assessments or taxes. Section 125.01(1)(p) and (q) relates to the powers of counties, not special districts. In light of this, I cannot definitively state that the foregoing statutes provide sufficient legislative authority to authorize the fire control district to enter into such an agreement. But see, AGO 74-307 stating that a county was authorized to enter into an agreement with a city whereby the city would provide fire protection to some portion of the unincorporated territory of the county pursuant to s125.01(1)(p).
Under s 125.0101, F.S., counties are given the power to contract with municipalities and special districts within the county for, inter alia, fire protection services to be funded as agreed upon by the county and the municipality or special district. The county is not authorized under this section, however, to impose any service charge or special assessment or to levy any tax within the municipality or special district and the section is not to be construed as authorizing the creation of a municipal service taxing unit within such an area. Subsection (3) of the statute specifically states that "[m]unicipalities and special districts are hereby authorized and empowered to enter into service contracts pursuant to this section."
This statute, adopted in 1980 by Ch. 80-47, Laws of Florida, does not appear to have been extensively litigated. While the section authorizes counties and special districts to enter into contracts for fire protection services, I note that the heading of this section, provided by the Legislature, states that "[c]ounty may contract to provide services to municipalities and special districts." (e.s.) See also, the title to Ch. 80-47, Laws of Florida, which states that it is "[a]n act relating to counties; creating s. 125.0101, Florida Statutes, empowering counties to provide certain services to certain municipalities and special districts pursuant to a contract; requiring municipal or special district funding . . . ." (e.s.) See generally, Finn v. Finn,312 So.2d 726 (Fla. 1975) (title of act not part of act but has function of defining scope of act); Speights v. State,414 So.2d 574 (1 D.C.A.Fla., 1982) (although not part of statute, title is valuable aid in determining legislative intent); AGO 57-314 (where heading is furnished by Legislature, consideration of heading is proper in determining intent of Legislature). In light of the language of both the heading of the section and the title of its enabling legislation, a question exists as to whether the statute contemplates the furnishing of such services by a special district to a county.
Section 163.01, F.S., however, the Florida Interlocal Cooperation Act of 1969, provides that a public agency of this state may exercise jointly with any other public agency of this state any power, privilege or authority which such agencies share in common and which each might exercise separately. See, s 163.01(3)(b) defining "public agency" to include, inter alia, a "county, . . . single and multipurpose special district, [and] single and multipurpose public authority . . . ." And see, s 163.01(2) stating that it is the purpose of the section to "permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities." This joint exercise of power is to be made by contract in the form of an interlocal agreement. See, s 163.01(5). And see, s 163.01(6) stating that such an agreement may provide for one or more of the parties to administer or execute the agreement or to provide all or part of the services set forth in the agreement in the manner set forth in the agreement. See also, s 163.01(5)(d), F.S., providing that the interlocal agreement may provide the manner in which the parties to the interlocal agreement will provide from their treasuries the financial support for the purposes set forth in the interlocal agreement. Both the special fire control district and the county possess the authority to provide fire protection services. See, s 125.01(1)(d) and (q), F.S., relating to the county's authority to provide fire protection. Thus it appears that pursuant to s 163.01, the fire control district and the county may enter into an interlocal agreement for the joint exercise of this power and in the interlocal agreement provide that the fire control district shall provide fire protection services to and within that part of the unincorporated area of the county, or within a duly established municipal service taxing or benefit unit or units within that part of the unincorporated area, located outside of the district's boundaries. Moreover, in light of the questions raised regarding the district's authority to contract with and furnish services to the county pursuant to ss 125.01(1)(p) and 125.0101, F.S., the district should proceed under s 163.01, F.S.
Accordingly, I am of the opinion, until and unless judicially determined otherwise, that pursuant to s 163.01, F.S., the South Trail Fire Protection and Rescue Service District may enter into an interlocal agreement with Lee County to provide fire protection services to and within that part of the unincorporated area of the county, or within duly formed municipal service taxing or benefit units within that part of the unincorporated area of the county, located outside of the district's territorial boundaries.
Sincerely,
Jim Smith Attorney General
Prepared by:
Joslyn Wilson Assistant Attorney General