Mr. Allen J. Levin Legal Counsel Port Charlotte-Charlotte Harbor Fire Control District 3440 Conway Boulevard Port Charlotte, Florida 33952
Dear Mr. Levin:
This is in response to your request for an opinion asking substantially the following question:
 IS THE GOVERNING BOARD OF THE PORT CHARLOTTE-CHARLOTTE HARBOR FIRE CONTROL DISTRICT AUTHORIZED BY LAW TO PURCHASE A MEMBERSHIP IN A YACHT CLUB FOR THE DISTRICT'S FIRE CHIEF?
Your inquiry states that the fire chief has requested that the district's governing board purchase a membership for him in the local yacht club `in order that he might have a place to take visiting dignitaries for lunch and/or dinner, and could also use the exchange privileges of that yacht club membership to take such dignitaries to lunch and dinner in other parts of the state while attending meetings with them in their particular localities.' Accordingly, you have requested an opinion of this office as to the `propriety' of taking such action.
The Port Charlotte-Charlotte Harbor Fire Control District was created by s 1 of Ch. 65-1355, Laws of Florida, as `a special fire control district . . . which shall become and be a public municipal corporation having the powers, duties, rights, obligations and immunities herein set forth. . . .' See, AGO 74-169, concluding that a special act creating a special fire control district as a `public municipal corporation' established a public quasi corporation, a governmental agency having only those powers delegated to it by law. Section 9(a) of Ch. 65-1355, as amended, provides as follows:
 No funds of said district shall be used for any purposes other than the administration of the affairs and business of said district, for the construction, care, maintenance, upkeep, operation, and purchase of fire fighting equipment or a fire station, installation of fire hydrants, payment of public utilities such as electric lights and water, payment of salaries of a fire chief and assistant fire chief and one (1) or more fireman [sic], as the board of commissioners may from time to time determine to be necessary for the operations and effectiveness of said district. (e.s.)
The general rule of law applicable to a special taxing district such as the Port Charlotte-Charlotte Harbor Fire Control District is that such special district possesses only such power and authority as is expressly granted by law or necessarily implied therefrom to carry out an expressly granted power. See, e.g., Forbes Pioneer Boat Line v. Board of Com'rs of Everglades Drainage Dist., 82 So. 346 (Fla. 1919); State ex rel. Hathaway v. Smith,35 So.2d 650 (Fla. 1948); AGO's 83-44, 82-89, 76-200, 74-169, 73-374 and 69-130. Moreover, authority implied from express powers will not warrant the exercise of a substantive power not conferred. See, Molwin Inv. Co. v. Turner, 167 So. 33 (Fla. 1936). See also, Haines City v. Certain Lands, Etc., 178 So. 143
(Fla. 1937) (power sought to be implied from express grant of power must be necessary, indispensable or essential, not merely convenient, to the attainment of the declared objects and purposes). If there is any doubt as to the lawful existence of a power sought to be exercised, such doubt should be resolved against exercise of the power. See, Edgerton v. International Company, 82 So.2d 488 (Fla. 1956).
In AGO 68-12, this office was asked whether expenditures of public funds by a taxing district for entertainment purposes were legal. With specific regard to the expenditure of district funds by flood control and water management districts, this office stated as follows:
 In many of the recent statutes or local laws, as well as in amendments of existing statutes or local laws, specific and express provision has been made by the legislature for the expenditure of public funds for purposes of hospitality and entertainment by the district, authority, commission, agency, etc., which leads to the suggestion, if not the conclusion, that the legislature, in such instances, must have deemed legislation necessary before public funds may be used for purposes of hospitality and entertainment. Normally, the creation and establishment of . . . districts generally, would not of itself indicate the need of carrying on extensive programs of hospitality and entertainment and similar programs, unless there be inserted in the charter, or other applicable statute, a specific provision therefor.
Cf., AGO 76-191 (public officer may not expend public funds for the purpose of defraying the cost of placing his or her name on an official motor vehicle used in the conduct of official business unless authorized by express or necessarily implied statutory authority); O'Neill v. Burns, 198 So.2d 1, 4 (Fla. 1967) (state or its subdivisions may disburse public funds to nongovernmental entities only where there is some clearly identified and concrete public purpose as primary objective and reasonable expectation that such purpose will be substantially and effectively accomplished). Compare, AGO 84-9, concluding that the State Attorney's Office could pay membership dues in Florida Prosecuting Attorneys Association pursuant to s 216.345, F.S., authorizing state agencies to use state funds for the purpose of paying dues for membership in organizations only when such membership is essential to the statutory duties and responsibilities of the agency. And see, AGO 72-284, issued prior to the enactment of s 216.345, concluding that a determination whether membership dues for public officials in professional or official organizations may be paid from public funds must be decided on an ad hoc basis, depending upon the particular employee, the particular organization which he desires to join and whether it can be clearly shown that the employee's membership in such organization will be of direct benefit to the employee in carrying out his official duties and of direct benefit to the agency by which he is employed in the performance of its statutory powers and functions. I am unable to discern such direct benefit to the fire chief of the Port Charlotte-Charlotte *2628 Harbor Fire Control District in carrying out his official duties or to the district itself resulting from the chief's membership in a yacht club so as to sanction the use of public funds to purchase such membership, nor can I conclude that membership in the yacht club is necessary or essential in carrying out the statutorily imposed duties and responsibilities of the special district. Thus, in the absence of a specific statutory provision therefor, I am of the opinion that the Port Charlotte-Charlotte Harbor Fire Control District is not authorized by law to purchase a membership in a yacht club for the district's fire chief.
I have examined the provisions of ss 9(a) and 11(c) of Ch. 65-1355, Laws of Florida, as amended, insofar as such sections authorize the governing board of the Port Charlotte-Charlotte Harbor Fire Control District to use public funds to pay the salary of the fire chief and to determine such salary. However, it is the prevailing general rule that statutes relating to the compensation of public officers or employees must be strictly construed in favor of the government and that such officers or employees are entitled only to that which is clearly given. 67 C.J.S. Officers s 226(d). Generally, the term `salary' signifies a fixed periodical compensation paid for services rendered. 67 C.J.S. Officers s 224(a). See, AGO 82-60, distinguishing between `salary' and perquisite.' See also, Black's Law Dictionary 1027 (5th Ed. 1979) (defining `perquisites' as `emoluments, fringe benefits, or other incidental profits or benefits attaching to an office or position'). This office has consistently ruled that express statutory authority must exist before public funds may be used to pay additional compensation, or benefits in any form, over and above salary to public officers and employees. Attorney General Opinion 78-12. See, AGO 78-76, noting that payment of the costs of a community college's employees' physical examinations is a fringe benefit or perquisite which is not, in the absence of statutory definition, ordinarily embraced within the term `salary.' Cf., AGO 71-28 (state officer must point to constitutional or statutory authorization before expending state funds or incurring state obligations).
Thus, I am unable to conclude that the provisions of Ch. 65-1355, Laws of Florida, as amended, granting the governing, board of the Port Charlotte-Charlotte Harbor Fire Control District the power to set the salary of the fire chief and authorizing the payment of public funds therefor, operate to authorize the board to purchase a membership in a yacht club for the district's fire chief, since membership is in the nature of a fringe benefit or perquisite, as distinguished from the fixed periodical compensation for services rendered which constitutes the fire chief's salary.
Therefore, unless and until legislatively or judicially determined otherwise, I am of the opinion that the governing board of the Port Charlotte-Charlotte Harbor Fire Control District is not authorized by law to purchase a membership in a yacht club for the district's fire chief.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General