Mr. Clayton J.M. Adkinson DeFuniak Springs City Attorney Post Office Box 1207 DeFuniak Springs, Florida 32435
Dear Mr. Adkinson:
You ask substantially the following question:
Does the lease of a portion of the city's airport property for the purpose of construction of a hanger by a private individual for storage of his aircraft constitute a violation of Article VII, section 10, Florida Constitution?
In sum:
The lease of a portion of the city's airport property for the purpose of construction of a hanger by a private individual for storage of his aircraft does not constitute a violation of ArticleVII, section 10, Florida Constitution, where the city determines that the property is not needed by the city and the city's credit or property is not placed in jeopardy by such a lease.
You state that the City of DeFuniak Springs owns the real property on which the city airport is located. The city has a contract with an individual to operate the airport. Under the agreement the airport operator has the authority to construct hangers on the property but if he does not do so, the city may allow third parties to construct hangers at the airport. The city is interested in leasing a portion of the property to a third party who would construct a hanger to house his aircraft. The lease would be for a period of twenty years with the third party responsible for the construction costs and for maintaining the hanger and keeping it insured. The hanger is to be used only for the storage of his aircraft. If the city does not renew the lease, the hanger becomes the property of the city. In addition, if at any time during the lease the third party ceases to use the hanger, the hanger would become the property of the city. The question has arisen whether such a lease of municipal property violates Article VII, section 10, Florida Constitution.
Article VII, section 10, Florida Constitution, provides in pertinent part:
"Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person[.]"[1]
The purpose of the above constitutional provision (and its predecessor under the 1885 Constitution)[2] is to keep the State out of private business; to insulate State funds against loans to individual corporations or associations, and to withhold the State's credit from entanglement in private enterprise.[3] In determining whether the public credit has been loaned, the courts have generally stated that the public must be directly or contingently liable to pay something to someone. As the Supreme Court of Florida stated in State v. Housing Finance Authority ofPolk County,[4] the lending of credit means the assumption by the public body of some degree of the direct or indirect obligation to pay a debt of the third party. In situations where there is no such undertaking by the public body to pay the obligation from public funds and no public property is placed in jeopardy by default of the third party, there is no lending of the public credit.
The authority of a municipality to lease its property not currently needed for municipal purposes has been recognized by statute and by the courts.[5] Moreover, where no bonds have been issued, no public funds spent, and no power of eminent domain exercised, it has been recognized that a city may lease city property for private use without violating Article VII, section10, Florida Constitution.[6] In Bannon v. Port of Palm BeachDistrict,[7] the Supreme Court of Florida held that where the lease by a port authority of its artificial island to a private corporation for development at private expense did not violate Article VII, section 10, supra, where no bonded indebtedness or monetary obligation of any kind attached to the port district as a result of the lease, the district did not become joint owner or stockholder of the corporation, and it was not obligated in any manner to encumber its credit to the advantage of the corporation.
In the instant inquiry, you have indicated that the city would incur no liability nor expend any funds under the proposed lease. The third party would be responsible for construction and maintenance of the hanger and the city's property would not be used as security for such costs. If the lease was not renewed or the private party failed to utilize the hanger, the hanger would become the property of the city.
In light of the above, I am of the opinion that the lease of a portion of the city's airport property for the purpose of construction of a hanger by a private individual for storage of his aircraft would not constitute a violation of Article VII, section 10, Florida Constitution, where the city determines that the property is not needed by the city and the city's credit or property is not placed in jeopardy by such a lease.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] The constitutional provision lists several exemptions not applicable to the instant inquiry. See, Art. VII, s. 10(a)-(d), Fla. Const. 
[2] Article IX, s. 10, Fla. Const. 1885.
[3] See, Dade County, Board of Public Instruction v. MichiganMutual Liability Company, 174 So.2d 3 (Fla. 1965); Bailey v. Cityof Tampa, 111 So. 119, 120 (Fla. 1926).
[4] 376 So.2d 1158, 1160 (Fla. 1979).
[5] See, City of West Palm Beach v. Williams, 291 So.2d 572
(Fla. 1974). See generally, s. 332.06(3) and (4), Fla. Stat., which makes provision for the lease of airport property by a municipality. Cf., Op. Att'y Gen. Fla. 94-96 (1994), discussing the authority of a county commission to enter into a long-term lease of airport property. And see, and s. 167.77(1), Fla. Stat. 1971, authorizing a municipality to dispose of property not needed for current or future municipal use, by sale or lease for nonpublic uses to the highest and best bidder for the particular use the municipality deems to be the highest and best use, for such length of term and conditions, as the governing body may in its discretion determine. While Ch. 167, Fla. Stat. 1971, was repealed in 1973, by the Municipal Home Rule Powers Act, Ch. 166, Fla. Stat., s. 166.042(1), Fla. Stat., provides that the repeal of certain chapters of the Florida Statutes, including Ch. 167, by Ch. 166, shall not be interpreted to limit or restrict the powers of municipal officials; instead "municipalities shall continue to exercise all powers heretofore conferred on municipalities by the chapters enumerated above, but shall hereafter exercise those powers at their own discretion, subject only to the terms and conditions which they choose to prescribe." See also, s.166.021(1) and (4), Fla. Stat., granting broad home rule powers.
[6] City of West Palm Beach v. Williams, supra.
[7] 246 So.2d 737 (Fla. 1971).