W. D. BAILEY, *Appellant,* v. CITY OF TAMPA, A MUNICIPAL CORPORATION, AND TAMPA BOARD OF TRADE, A CORPORATION, *Appellees.*

## Division B.

## Opinion Filed December 7, 1926.

1. Section 10 of Article 9 of the Constitution is an inhibition against all municipalities in this state becoming stockholders in, obtaining or appropriating money for, or in any wise loaning their credits to any corporation, association, institution or individual.

2. Acts of the legislature authorizing municipalities to sell, lease or contract for the sale of lands held by them in trust for public purposes are not violative of Section 10 of Article 9 of the Constitution.

3. Whether or not legally authorized contracts for the sale of land by municipalities are wise as a matter of policy is solely in the discretion of the officers of the municipality to determine and such discretion will not be interfered with by the courts unless there is a showing of illegality, fraud or abuse of authority.

An Appeal from the Circuit Court for Hillsborough County; L. L. Parks, Judge.

Affirmed.

*Wm. Hunter* and *W. C. Brooker,* for Appellant;

*Doyle E. Carlton* and *Cody Fowler,* for Appellees.

TERRELL, J.—Subject to ratification by the qualified electors of the City of Tampa, Florida, the said City on January 13, 1925, agreed in writing to convey to the Tampa

Board of Trade that certain piece or parcel of land more specifically therein described, the material part of said agreement to convey being as follows:

"And the Tampa Board of Trade, on its part, does hereby agree to erect on said land a building, plans of which are to be approved by the commissioners of the City of Tampa and their engineers, within three years from this date, and upon failure so to do to reconvey said property to the City of Tampa upon demand, the expense and cost of said building to be paid by the Tampa Board of Trade without any obligation or expense on the part of the City of Tampa. The Tampa Board of Trade on its part does further agree to reconvey said land, together with the improvements placed thereon, to the City of Tampa upon the retiring or liquidating of bonds, notes or mortgages issued against said property for the erection of the building thereon, free from any lien or indebtedness, such liquidation to be not later than thirty-five (35) years from this date, subject, however, to the right of the Tampa Board of Trade to use such part of said land and improvements thereon, including the building, as may be necessary for its use in carrying out the purposes for which said Tampa Board of Trade is organized and operated consistent with the public interest."

This agreement was ratified by a majortiy of the electors of the City of Tampa who voted at an election legally called and held for that purpose March 17, 1925, and deed was duly executed by the city conveying the lands described in the contract subject to the terms thereof.

Prior to the delivery of the said deed and taking possession of the property by the Tampa Board of Trade, W. D. Bailey, appellant here, brought his bill to restrain the City of Tampa from delivering said deed and possession of the property to the Tampa Board of Trade and to declare said deed and contract null and void. To the bill of complaint

the City of Tampa and the Tampa Board of Trade each filed its separate answer. The cause was heard on bill and answer, resulting in a decree dismissing the bill, and appeal was prosecuted from that decree.

Appellant contends that the City of Tampa had no right, power or authority under the Constitution and Laws of Florida to execute the contract and deed complained of, and in support of his contention invokes Section 10 of Article 9 of the Constitution of Florida, the pertinent part of which is as follows:

"The Legislature shall not authorize any county, City, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual."

The transaction between the City of Tampa and the Tampa Board of Trade was entered into pursuant to Section 2 of Chapter 5546, Acts of 1905, and Section 1 of Chapter 9095, Acts of 1921, which are as follows:

Section 2, Chapter 5546:

"The Board of Commissioners of Public Works shall have full right and authority to sell, contract for the sale of or lease any or all of the properties acquired by the City of Tampa for park purposes, or which shall come under said board's management or control under the provisions of this act for the benefit of the city of Tampa: Provided, however, That before any sale, contract of sale, or lease for a longer term than five years, shall become enforceable or binding upon the city of Tampa, such sale, contract of sale, or lease for a longer term than five years shall first be submitted to the qualified electors of the city of Tampa at an election regularly held for that purpose, for approval and ratification, and if such sale, contract of sale, or lease for a longer term than five years be

approved and ratified by a majority of the qualified elec-
tors of the City of Tampa participating in such election,
it shall be the duty of the Mayor, City Auditor and City
Clerk of the City of Tampa, to sign and execute under the
seal of the city, all necessary instruments of writing to
carry into full force and effect such sale, contract of sale,
or lease."

Section 1 of Chapter 9095:

"The inhabitants of the City of Tampa, Florida, as its
limits now are or as the same may hereafter be established,
shall continue to be a body politic and corporate under the
name of the City of Tampa, and as such shall have per-
petual succession; with full power and authority to sue
and be sued, to plead and be impleaded; to have and use a
common seal and to change it at pleasure; to lease, receive
and hold property, real, personal and mixed within the
city, and to lease, sell or otherwise dispose of the same for
the benefit of the city."

From the foregoing it may be stated that the concrete
question presented here for our determination is whether
or not the legislature has authorized the City of Tampa to
appropriate money for or to loan its credit to the Tampa
Board of Trade, and whether the transaction as thus out-
lined amounts to such an appropriation of money or loan-
ing of credit on the part of the city. The showing made
in the record is the medium through which this question
must be resolved.

Chapter 5546, Acts of 1905, and Chapter 9095, Acts of
1921, and the proceedings of the City Commissioners of
the City of Tampa, including the election held March 17,
1925, are full authority for the transaction here questioned
if not in conflict with Section 10 of Article 9 of the Con-
stitution.

In addition to the facts shown by that part of the con-

tract ·here quoted the record disclosed that the Tampa Board of Trade had already perfected its arrangements and secured plans and specifications which had been approved by the City of Tampa for the erection of an eighteen-story office building on the lands described in said contract free of cost to said city, but at a cost of not less than Four Hundred Thousand Dollars ($400,000.00) to the Tampa Board of Trade, the said building to be modern in every respect, with a useful life of at least seventy-five years; that a very large portion of said building was to be turned over for the use and disposal of said city at the time of completion, and that within thirty-five years the whole of said building, including the lands on which it was located, reverted free of cost to the city, except such office space as may be necessary for the Tampa Board of Trade to carry out the purpose of its organization and to operate consistent with public interest. It is also shown that in design, utility and appearance the said building must be constructed to respond to the various demands of the City of Tampa, and if not constructed within three years the contract to be void and the lands reconveyed to the city. .

The Board of Trade entered into the contract here involved and immediately commenced perfecting plans to execute its terms. There is no suggestion in the contract that the City of Tampa take any stock in, obtain or appropriate any money for, or in any way loan its credit to the Board of Trade to assist it in carrying out its part of the contract so entered into with the city in violation of Section 10 of Article 9 of the Constitution.

Section 10 of Article 9 of our organic law was first adopted in 1875 as an Amendment to Section 7 of Article 13 of the Constitution of 1868. The reason for this amendment was that during the years immediately preceding

its adoption the State and many of its counties, cities and towns had by legislative enactment become stockholders or bondholders in and had in other ways loaned their credit to and had become interested in the organization and operation of railroads, banks and other commercial institutions. Many of these institutions were poorly managed and either failed or become heavily involved, and as a result the State, counties and cities interested in them became responsible for their debts and other obligations. These obligations fell ultimately on the taxpayers. Hence the amendment, the essence of which was to restrict the activities and functions of the State, county and municipality to that of government and forbid their engaging directly or indirectly in commercial enterprises for profit.

Inspection of the Acts here quoted in the light of Section 10 of Article 9 of the Constitution, reveals no authorization on the part of the City of Tampa to become a stockholder in the Tampa Board of Trade, or to obtain or appropriate money for it, or to loan it or any other corporation, association, institution or individual its credit. Since this is true and the contract entered into between the City of Tampa and the Tampa Board of Trade pursuant to said Act clearly negatives any purpose on the part of the city to appropriate money for or loan its credit to the Board of Trade, we fail to see where the clear mandate of the Constitution has been violated.

Whether or not the contract was wise as a matter of policy was solely in the authority and discretion of the officers and electors of the city to determine. It is well settled that the authority of the city to dispose of its property for such purposes will not be interfered with by the courts unless there is a showing of illegality, fraud or abuse of such authority. Haesloop v. City Council of Charleston, 123 S. C. 272, 115 S. E. Rep. 596; 28 Cyc. 1744.

We have found no case in point with this one, but the following strongly support the view as expressed in this opinion: Haesloop v. City Council of Charleston, *supra;* Lehigh Val. R. Co. v. Canal Board, 204 N. Y. 471, 97 N. E. Rep. 964, Ann Cas. 1913 C. 1228 Note 1230; International Garden Club v. Hennessy, 172 N. Y. S. 8; City of Minneapolis v. Janney, 86 Minn. 111, 90 N. W. Rep. 312.

It not being made to appear that either the Act complained of or the contract made in pursuance of it, is in violation of the Constitution of Florida, the decree of the Chancellor is affirmed.

Affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur; ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.