246 So.2d 737 (1971)
Marvin I. BANNON and Lillian M. Bannon, His Wife, Appellants,
v.
PORT OF PALM BEACH DISTRICT, and Peanut Island Properties, Inc., Appellees.
No. 39374.
Supreme Court of Florida.
March 31, 1971.
James S. Robinson, of Sullivan & Robinson, West Palm Beach, for appellants.
Douglas C. Fulton, of Burns & Weber, West Palm Beach, for Port of Palm Beach District.
Peter Van Andel, of Gunster, Yoakley, Criser, Stewart & Hersey, Palm Beach, for Peanut Island Properties, Inc.
*738 Joseph C. Jacobs and Ben H. Wilkinson, of Ervin, Pennington, Varn & Jacobs, Tallahassee, for Save Peanut Island, Inc., amicus curiae.
ROBERTS, Chief Justice.
We have for review on direct appeal a judgment of the trial court validating a long term lease between the Port of Palm Beach District and Peanut Island Properties, Inc. in which, inter alia, that court construed a controlling provision of the Constitution and held specifically that the lease and the development plan do not violate Sections 5, 7 and 10 of Article IX, Florida Constitution of 1885 as amended, and do not violate Sections 9 and 10 of Article VII, 1968 revision of the Florida Constitution, F.S.A.
Appellants appearing below as individuals and on behalf of the taxpayers of the Port of Palm Beach District instituted the litigation contending that the Port had violated its statutory grant of powers as set forth in § 315.03, Florida Statutes, F.S.A. as well as the sections of the Constitution above mentioned. They alleged that the Port leased property it owned but which did not constitute a "port facility" as defined by the statutes to a private corporation which they contend was for a private rather than a public purpose. Peanut Island Properties, Inc., the lessee and appellee here, denied the allegations and counterclaimed for a declaration that the land in question did constitute a "port facility" and that the Port had statutory and organic authority to make the lease.
The trial court found that the Port District had the authority by statute to lease the land in question to the tenant, that the land involved as the subject matter of the lease was a "port facility" as defined in § 315.02(6), Florida Statutes, F.S.A., that the Port District by entering the lease did not appropriate money for or lend its credit to or become a joint owner with or levy taxes for the benefit of the lessee, and that the lease is valid and binding between the parties.
Being aggrieved by the judgment, the appellants bring this appeal and pose questions:
1. Is Peanut Island a "port facility" as defined in the applicable statutes or acts?
2. Does the Port have the authority under the applicable special and general acts of the State of Florida to lease the land for the purposes contained in the lease?
3. Does the proposed implementation of the lease violate the constitutional and statutory prohibitions against lending the credit of the State of Florida for a private purpose?
We shall deal with them in the order in which they are presented.
Appellants contend that although the Port District has owned a portion of the island for a long time, the property has never been utilized for any port purposes and cannot qualify as a "port facility." We do not agree. Section 315.02(6), Florida Statutes, F.S.A. defines a port facility as follows:
"The term `port facilities' shall mean and shall include harbor, shipping and port facilities and improvements of every kind, nature and description, including (but without limitation) channels, turning basins, jetties, breakwaters, public landings, wharves, docks, markets, parks, recreational facilities, structures, buildings, piers, storage facilities, public buildings and plazas, anchorages, utilities, bridges, tunnels, roads, causeways and any and all property and facilities necessary or useful in connection with the foregoing, and any one or more or any combination thereof and any extension, addition, betterment or improvement of any thereof."
Peanut Island is an artificial island that was created by dumping the spoil occasioned by dredging the Palm Beach Inlet. The Port District's acquisition began subsequent *739 to a resolution of the Port Commissioners in 1921 and was completed in 1950. The purpose of the Port District is indicated in the initial purchase resolution which, inter alia, said:
"Whereas, the said Island is capable of being improved by the erection of docks and wharves and the construction of buildings on said island for stores, warehouses, quarantine or other purposes; and
"Whereas, the Lake Worth Inlet District can better maintain an inlet between the waters of the Atlantic Ocean, better attain the objects of the creation of the said Inlet District and contribute more to the maintenance of the health of the inhabitants of the Territory embraced in the said District and the welfare of said District if control and ownership of land not owned by the State of Florida and created through the dredging operations of the said District be vested in the said Lake Worth Inlet District."
It appears from the record here that since the time of purchase, the portion of Peanut Island owned by the Port District has been used primarily as an undeveloped recreation facility, a public landing, and anchorage. It also serves as a windscreen to protect the port terminals from adverse weather. The evidence clearly indicates that the portion of the island owned by the District is a "port facility" as defined by the statutes, and being so, it is properly subject to being leased for public or private purposes as the governing body of the District determines is in the best interest of the Port.
We next consider the question of whether or not the Authority had the power to lease the land for a private development at no public expense. Section 315.03 (9) of the Florida Statutes, F.S.A., which in enumerating the powers of ports, states the following:
"To sell at public or private sale or lease for public or private purposes all or any portion of any port facilities now or hereafter owned by the unit, including any such facilities as extended, enlarged or improved, and all or any portion of any property of the unit improved, created, extended or enlarged under the authority of this law, on such terms and subject to such conditions as the governing body shall determine to be in the best interests of the unit." (Emphasis supplied)
Further, Section 315.03(14) states the following:

"To lease or rent, or contract with others for the operation of all or any part of any port facilities now or hereafter acquired, owned or constructed by the unit, on such terms and for such period or periods and subject to such conditions, as the governing body shall determine to be in the best interests of the unit." (Emphasis supplied)
Section 315.14 defines "public purposes" as used in Chapter 315 of the Florida Statutes, as follows:
"Public purposes.  It is hereby determined and declared that each and all of the powers conferred by this law and the exercise thereof are proper public and municipal purposes."
Also, Section 315.15 states:
"Additional and alternative method.  This law shall be deemed to provide an additional and alternative method for the doing of the things authorized hereby and shall be regarded as supplemental and additional to the powers conferred by any other law, either general, special or local, and shall not be regarded as in derogation of any power now, existing." In addition to the foregoing, we find that the Port of Palm Beach District was created by Chapter 7081, Special Acts of the Legislature, 1915, which has been supplemented and amended from time to time. Section 6, as amended, *740 Chapter 7522, Acts of 1917, states the following:
"* * * that the Board of Commissioners of the Lake Worth Inlet District (original name) be and it is hereby authorized and empowered for and on behalf of the said Lake Worth Inlet District, to use, hold, occupy, control, develop, lease or make any other disposition of any property to be acquired for and on behalf of the said Lake Worth Inlet District under and by virtue of this Act, which said Board shall deem advisable and for the best interests of the said Lake Worth Inlet District." (Emphasis supplied)
Section 21(N) of Chapter 59-1701, Special Acts of 1959, and relating to the District among other things provides:

"The district shall have power to contract with any person, private or public corporation, the state of Florida, or any agency, instrumentality or county, municipality, political subdivision thereof, or any agency, instrumentality or corporation of or created by the United States of America, with respect to such port facilities, or any port improvements or any parts thereof, and shall also have power to accept and receive grants or loans from the same and in connection with any such contract, grant or loan, to stipulate and agree to such covenants, terms and conditions as the governing body of the district shall deem appropriate." (Emphasis supplied)
In view of the foregoing, it is obvious that the Authority acted within the orbit of its power in making the lease.
We finally reach the question of whether or not the leasing of the property to a private concern for development at private expense violates the constitutional and statutory prohibition against the lending of the credit of the State for a private purpose, or whether or not the overall plan is prohibited by the organic law of the State. It is submitted that Section 315.03(9), Florida Statutes, F.S.A., is not unconstitutional as it relates to the leasing of a port facility to a private party so long as the private entity is performing a public function or serving a public purpose as an integral part of an overall plan. The decisions of this Court relied upon by the appellants in State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967) and State v. County of Dade, 210 So.2d 200 (Fla. 1968) might give some comfort to appellants in their argument if, as in both those cases, the project herein involved the issuance of revenue bonds or some other form of public financing to finance the construction of a facility for the exclusive use of a private concern, but, in the present instance, we are faced with no such financing scheme. No bonded indebtedness or monetary obligation of any kind attached to the Port District as a result of the lease. Also involved is the basic issue of whether a long term lease of property owned by the Port District to a private concern is, per se, a violation of Article VII, Section 10, Florida Constitution of 1968, relating to the prohibition against the credit of the State being pledged or lent. It is suggested by appellants that due to the lack of a paramount public purpose being served, the lease sub judice is an encumbrance upon public property for the benefit of a private concern to the extent of creating an "in fact" unconstitutional joinder of public and private ownership and responsibility for the venture planned. We do not find it necessary to determine whether the purposes to be served by the development of the leased property are primarily public or private in nature. The District in leasing the property in question was exercising a power conferred on it by the 1959 Port Facilities Financing Law. Section 315.14 of that law determines and declares, "* * * that each and all of the powers conferred by this law and the exercise thereof are proper public and municipal purposes." Appellants fail to demonstrate otherwise. The District, by virtue of the lease agreement, did not become a joint owner or stockholder of the private *741 tenant, nor did it lend, obligate or in any manner encumber its credit to the advantage of the tenant. Contrary to the allegations of appellants, the lease does not operate to guarantee that the tenant will inherit the "tax-free" status our Legislature has bestowed upon property held by the Port District. The District's participation in the transaction is limited to that of a lessor and does not involve any responsibility for the financing, promotion or development of the proposed project. We agree with appellants' contention that Section 10, Article VII, Florida Constitution of 1968, acts to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited. The rationale of this constitutional dictate was examined in depth in Bailey v. City of Tampa, 92 Fla. 1030, 111 So. 119 (1926):
"The reason for this amendment was that, during the years immediately preceding its adoption, the state and many of its counties, cities, and towns had by legislative enactment become stockholders or bondholders in, and had in other ways loaned their credit to, and had become interested in the organization and operation of, railroads, banks, and other commercial institutions. Many of these institutions were poorly managed, and either failed or became heavily involved, and, as a result, the state, counties, and cities interested in them became responsible for their debts and other obligations. * * * Hence the amendment, the essence of which was to restrict the activities and functions of the state, county, and municipality to that of government, and forbid their engaging directly or indirectly in commercial enterprises."
In the case sub judice, the District has no financial responsibility and if all failed for the corporate tenant, the District would not bear any responsibility or obligation to the creditors nor would its ownership of the land be committed for such. Its interest and credit remain free from attachment and neither the spirit nor the letter of Article VII, Section 1, Florida Constitution of 1968 has been violated.
We have carefully examined the decree of the able trial judge and finding it to be without error, the judgment is
Affirmed.
CARLTON, ADKINS and BOYD, JJ., and REVELS, Circuit Judge, concur.