Mr. Mike Hale Deputy Secretary Workers' Compensation Department of Labor and Employment Security 1321 Executive Center Drive 200 Ashley Building Tallahassee, Florida
Dear Mr. Hale:
This is in response to your request for an opinion on substantially the following question:
 MAY THE DIVISION OF WORKERS' COMPENSATION EXPEND PUBLIC FUNDS FOR THE LEASING AND INSTALLATION OF COMPUTER TERMINALS AND OTHER NECESSARY ATTENDANT EQUIPMENT AND SERVICES, WHEN SUCH TERMINALS ARE TO BE PLACED IN OFFICES OF PRIVATE INSURANCE COMPANIES AS A PILOT PROJECT TO TEST THE FEASIBILITY AND COST EFFECTIVENESS OF A COMMUNICATION LINK BETWEEN THESE COMPANIES AND THE DIVISION?
Your inquiry states that in its routine administration and processing of claims, the Division of Workers' Compensation must collect and distribute vast amounts of data. Currently, much of this information is collected from insurance carriers and self-insurers through the use of paper reports (hard-copy) and other written communications. This results in an accumulation of paper, delays, and duplication. The division would, therefore, like to initiate a three month pilot project to determine whether an automated procedure is feasible in terms of time, money and efficiency.
This pilot program would use electronic data processing which would facilitate the flow of information between the division and three private for-profit insurance companies. As part of this project, the division would lease and place in each pilot participant's office a computer terminal which will be linked with the division's computer in the Caldwell Data Center. In addition to leasing the terminals, it will be necessary to install telephone lines in the offices of the participants and to obtain programming services; all of the costs connected with this project will be borne by the state.
Supplemental information furnished to our office by telephone indicates that it is the division's duties under s 440.185(4) which will be the subject matter of the pilot program. That subsection requires the division to monitor the furnishing of benefits by the employer or carrier to ascertain that correct benefits are being furnished in cases accepted as compensable injuries.
Under the present system, all claim information is collected on hard-copy, using forms. If there are questions, the division must use written communication and await a response. The claims' examiners who audit these files must manually search through all the papers that have accumulated in a file.
Under the pilot project, the participating insurers will submit the required reports on computer tape. The division examiners will assimilate the information from the tapes and its case files and then code and enter the information in the division's permanent data base. Thereafter, the division will have the capability of calling up claim information, entering information, making corrections and communicating electronically with the Carrier/Self-Insurer as the need arises.
The terminals would be placed in the offices of the Carriers/Self-Insurers so as to allow direct communication between the division and the Carrier/Self-Insurer. This would allow the examiners to use the remote terminals to immediately request and receive information on claims and identify errors and discrepancies. Only data that has been cleared by the division examiners would be entered into the permanent data base.
Though the remote terminals would be in the office of the participants, the Carriers/Self-Insurers would not be able to call up and view information without going through an examiner. Further, in that the three proposed pilot participants presently have their own computer system, the state is not providing any additional equipment and/or services for such participants.
You also state that since the purpose of the proposed pilot project is to determine whether such a system of electronic data transmission and communication will be cost beneficial to the division and all carriers and self-insurers, you do not feel that the project is prohibited by s 10, Art. VII of the State Constitution, and you do not believe that the incidental benefit which the three carriers and self-insurers will realize in this pilot project will result in a constitutionally prohibited expenditure. The findings of this pilot project will be used in formulating the division's four (4) year, statutorily required,[1] electronic data processing plan which is due March 1, 1984.
For the purposes of this opinion, it is assumed that money has been properly appropriated and budgeted for this purpose, and it is further assumed that your division will obtain all required approvals for lease of this equipment as provided by s 3 of CS/HB 179.
For the following reasons, your question is answered in the affirmative.
Section 10, Art. VII, State Const., prohibits the state or county or any agency thereof from using, giving, or lending its taxing power or credit to aid any private interest or individual. The purpose of this constitutional provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited." Bannon v. Port of Palm Beach District,246 So.2d 737, 741 (Fla. 1971). Cf., Markham v. State Department of Revenue, 298 So.2d 210 (1 D.C.A.Fla., 1974); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); and Bailey v. City of Tampa,111 So. 119 (Fla. 1926). It is only when there is some clearly identified and concrete public purpose as the primary objective and a reasonable expectation that such purpose will be substantially and effectively accomplished, that the state or its subdivisions may disburse, loan or pledge public funds or property to a nongovernmental entity. O'Neill v. Burns, 198 So.2d 1
(Fla. 1967). Furthermore, the State Constitution prohibits the expenditure of public money for a private purpose. Section 1, Art. VII, State Const., impliedly limits the imposition of taxes and the expenditures of tax revenues to public purposes. See, Board of Commissioners v. Board of Pilot Commissioners, 42 So. 697
(Fla. 1906); Brown v. Winton, 197 So. 543 (Fla. 1940); AGO's 82-23; 80-93; 71-28.
The above described pilot project does not appear to contravene the rules established by Florida courts under s 10, Art. VII, since there is a clearly identified and concrete public purpose (an experiment to determine if such use of terminals would allow more economical and efficient communication between the division and pilot project participants and, if feasible, all Carriers/Self-Insurers in connection with the division's monitoring duties pursuant to s 440.185[4] and since there is only an incidental benefit to the pilot project participants (only data that has been cleared by your examiners, and necessary for the fulfillment of monitoring responsibilities under s 440.185[4], F.S., would be entered into the permanent data base, and Carriers/Self-Insurers would not be able to call up and view information without going through an examiner). Thus, control of the terminals will be retained by the division so as to avoid frustration of the public purpose, and to prevent any use other than that called for in the pilot project, and this pilot project will serve to determine whether such a program would be cost effective for the division, i.e., whether such placement of terminals would result in savings for your department in carrying out its monitoring duties under s 440.185(4), F.S. As such the experiment would appear to possess a public purpose as its primary objective coupled with a reasonable expectation that such purpose (a test for cost effectiveness) will be substantially accomplished. Compare, AGO 82-81 (in which installation of on-line computer systems in private tag agency offices was found not to implicate s 10 of Art. VII, since among other reasons, the primary benefits of such an installation would redound to the state) and contrast Informal Opinion to Reubin O'D. Askew, dated September 26, 1978 (which concluded that s 10 of Art. VII prohibited the state from spending public monies to provide computer interfacing capabilities to a private corporation since the information to be provided at state expense was to significantly benefit a private business). Unlike the computer interface discussed in that informal opinion, your proposed use of computer terminals in the above described pilot program (1) is merely an experiment to determine cost effectiveness and feasibility (pursuant to your department's duties under newly-enacted s 24.06, F.S., to formulate "information technology plans") and (2) if shown to be feasible and cost effective from the standpoint of saving state money, will be extended to all Carriers/Self-Insurers similarly situated and will be used in the performance of the division's statutory duties under ss 24.06, F.S. 1983, and 440.185(4), F.S.
In summary, s 10, Art. VII, State Const., does not prohibit the Division of Workers' Compensation's expenditure of public funds for the leasing and installation of computer terminals and other necessary attendant equipment and services, when such terminals are to be placed in offices of several private insurance companies as a three month pilot project to test the feasibility and cost effectiveness of a communication link between these companies and the division in carrying out the division's statutory duties under ss 24.06, F.S. 1983 and 440.185(4), F.S.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General
[1] Required by section 3 of CS/HB 179, which is to be codified as s 24.06, F.S. This bill enacts into law the "Florida Information Technology and Planning Act," and took effect July 1, 1983.