Mr. Robert Q. Williams City Attorney City of Tavares 221 North Joanna Avenue Tavares, Florida 32778
Dear Mr. Williams:
This is in response to your request for an opinion on substantially the following question:
 MAY THE CITY OF TAVARES PAY A DEBT INCURRED BY PRIVATE INDIVIDUALS WHO BORROWED MONEY TO PURCHASE REAL PROPERTY THAT THEY SUBSEQUENTLY DONATED TO THE CITY FOR USE IN THE CITY'S ATHLETIC COMPLEX?
You state in your letter that in 1982 when the City of Tavares was developing its athletic complex, a certain parcel of property adjoining the proposed site was not acquired. A group of local businessmen who were involved on a volunteer basis with planning the athletic complex felt that the parcel in question should be included in the complex. This group on their own formed a committee, which they called the Tavares Athletic Committee (TAC). The spokesman for the TAC apparently appeared before the city council and informed the council that the TAC group intended to purchase the parcel and donate it to the city free and clear of all liens and encumbrances. The city council was further assured by the TAC that the city would not incur any financial liability as a result of the acquisition and that the property would be donated to the city without any obligation on behalf of the city. The TAC spokesman explained that the TAC members would purchase the property and be reimbursed from voluntary contributions that they would solicit from other Tavares citizens.
The City of Tavares agreed to accept the parcel of land and entered into a multi-party agreement. In that agreement the city did not agree to pay for the property in question nor did the city agree to pay any debt incurred by the TAC members in consideration for the donation of the property. According to your letter, the city did agree informally to collect voluntary community contributions on behalf of the TAC and to turn these contributions over to the TAC group. A review of the copy of the multi-party agreement reveals these facts to be essentially correct. The city did, however, agree to pay for a title search and to waive certain permitting and connection fees for certain parties to the agreement.
The TAC group borrowed $30,000.00 to acquire the parcel of land and the parcel was subsequently deeded to the city, presumptively for purposes of this opinion, free of any liens or encumbrances. Efforts to raise community donations to reduce TAC's outstanding liability have not been entirely successful, and the TAC businessmen now seek to have the city reimburse them for their shortfall, some $20,000.00.
You question whether, under the facts of this situation, a municipality can legally expend public monies to reimburse these private individuals. The expenditure of public funds is limited by the provision contained in s. 10, Art. VII, State Const., prohibiting the state or counties or municipalities or any agency thereof from using, giving, or lending its taxing power or credit to aid any private interest or individual. The purpose of this constitutional provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited." Bannon v. Port of Palm Beach District, 246 So.2d 737, 741
(Fla. 1971). Cf., Markham v. State Department of Revenue,298 So.2d 210 (1 D.C.A.Fla., 1974); State v. Town of North Miami,59 So.2d 779 (Fla. 1952); and Bailey v. City of Tampa, 111 So. 119
(Fla. 1926). It is only when there is some clearly identified and concrete public purpose as the primary objective and a reasonable expectation that such purpose will be substantially and effectively accomplished, that the state or its subdivisions may disburse, loan or pledge public funds or property to a nongovernmental entity. O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). The Florida Supreme Court in Orange County Industrial Development Authority v. State, 427 So.2d 174 (Fla. 1983), recently reaffirmed its test that the purpose served in the proposed expenditure must be paramountly a public one. If, however, the benefits to a private party are the paramount purpose of a project, then the expenditure is not constitutionally valid even if the public derives some benefit therefrom. And see, Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971), wherein the court stated that the word "credit" as used in s. 10, Art. VII, State Const., prohibiting the pledge of credit of the state, counties or municipalities in aid of corporations or persons, implies the imposition of some new financial liability upon the state or political subdivision which in effect results in the creation of a state or political subdivision debt for the benefit of private enterprises. In AGO 84-103, this office concluded that an agreement by a municipality to indemnify a private for profit corporation for any financial losses the corporation might experience in providing emergency medical services to the city's residents would probably violate the prohibition of s. 10, Art. VII, State Const. See also, AGO 79-14 (expenditure of public funds by a municipality to repair or maintain private streets would appear to contravene s. 10, Art. VII, State Const.).
Furthermore, s. 1, Art. VII, State Const., impliedly limits the imposition of taxes and the expenditure of tax revenues to public purposes. See, Board of Commissioners v. Board of Pilot Commissioners, 42 So. 697 (Fla. 1906); Brown v. Winton, 197 So. 543
(Fla. 1940); AGO's 82-23, 80-93, 71-28. As a general principle, the power to levy and collect taxes and the power to appropriate public funds are coexistent and if a tax cannot be levied for a particular purpose, no appropriation of public money can be made for such purpose. See generally, 81A C.J.S. States s. 205, in which the rule is stated: "Generally, under express or implied constitutional provisions, public funds may be used only for a public purpose." And see, 81A C.J.S. States ss. 207, 209, 210; 56 Am.Jur.2d Municipal Corporations s. 588. In Brumby v. City of Clearwater, 149 So. 203 (Fla. 1933), the Florida Supreme Court construing an analogous provision of the 1885 Constitution, invalidated a contract between a municipality and a private individual under which the municipality agreed to dredge a channel leading to the individual's place of business. The Court stated that the contract was void because it clearly required the appropriation of public money for the individual's benefit and was an attempt to finance a private business enterprise for the use and benefit of an individual.
In this situation the City of Tavares would be spending public funds for a benefit that appears to clearly and paramountly serve a private benefit. Since the city is under no contractual obligation under the multi-party agreement and the property was transferred free of any liens or other encumbrances, no public benefit would be conferred by the municipality voluntarily agreeing to repay the debt incurred by these private individuals. Accordingly, the principles of the constitutional prohibition contained in s. 10 of Art. VII are clear, and I am constrained to conclude that the city is constitutionally prohibited from making such an appropriation.
In conclusion, I am therefore of the opinion that a municipality, having accepted property donated to the city free of any liens or encumbrances, is prohibited by s. 10, Art. VII, State Const., from subsequently using public funds to pay a debt incurred by private individuals to purchase such property for donation to the municipality.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General