Michael W. Connors Village Attorney Village of Royal Palm Beach
QUESTION:
Does s. 10, Art. VII, State Const., preclude the village, when selling surplus real property to a private purchaser and taking back a mortgage on the property, from subordinating that mortgage to a mortgage secured by the purchaser for the construction of improvements?
SUMMARY:
While a municipality would not be precluded from taking back a mortgage on surplus municipal property, the subordination of that mortgage to a mortgage secured by the purchaser for the construction of improvements would appear to be precluded by s. 10, Art. VII, State Const., when the primary beneficiary of such a subordination would be the purchaser, a private for profit corporation.
According to your letter, the Village Council of the Village of Royal Palm Beach is considering entering into a real estate purchase agreement for the sale of surplus municipal property to a private for profit corporation. Under the agreement, the property would be sold for a purchase price of 498,000 with the buyer delivering at closing 50,000 and executing a promissory note for the balance of 448,000 secured by a mortgage, payable over ten years. Under the agreement the village's mortgage will be subordinated to the lien of any mortgage securing indebtedness incurred by the buyer for the construction of improvements.
Municipalities in Florida possess broad governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services.[1] This office has recognized the authority of a municipality, absent a charter provision to the contrary, to dispose of surplus municipal property in whatever manner it deems to be in the best interest of the municipality and most likely to produce the best price for the property.[2]
Section 10, Art. VII, State Const., provides in pertinent part:
 Neither the state nor any . . . municipality . . . or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person . . . .
The purpose of the above constitutional provision (and its predecessor under the 1885 Constitution)[3] is "to keep the State out of private business; to insulate State funds against loans to individual corporations or associations and to withhold the State's credit from entanglement in private enterprise."[4]
In determining whether the public credit has been loaned, the courts have generally stated that the public must be directly or contingently liable to pay something to someone.[5]
As The Supreme Court of Florida stated in State v. Housing Finance Authority of Polk County,[6] the lending of credit means the assumption by the public body of some degree of the direct or indirect obligation to pay a debt of the third party. In situations where there is no such undertaking by the public body to pay the obligation from public funds and no public property is placed in jeopardy by default of the third party, there is no lending of the public credit.[7]
In AGO 82-42, this office considered a municipality's authority to sell surplus real estate under an agreement whereby the municipality took back a mortgage on the property sold in light of the above constitutional provision.[8] This office concluded that the taking back of a mortgage by a municipality did not constitute a loan or pledge of the public credit within the meaning of s. 10, Art. VII, State. Const., since the municipality was not directly or contingently liable to pay something to some-body and the property was not placed in jeopardy by a default.[9] If there was a default on the promissory note, the municipality could seek to recover the property through foreclosure.
Your inquiry, however, concerns not only the granting of a mortgage but the subordination of that mortgage to the lien of any mortgage obtained by the buyer for the construction of improvements on the property. As you note, the municipality is not directly liable on the construction loan.[10] However, in the event of a default on such loan, the municipality would be forced to assume the debt of the purchaser in order to prevent the loss of the property.
Thus, the arrangement would appear to place the municipality's interests in the property in jeopardy and would appear to be an indirect obligation on the part of the municipality to pay off the construction loan in order to protect its interest in the property.[11] Such subordination, therefore, would appear to implicate the provisions of s. 10, Art. VII, State Const. While there may be instances where the purpose to be served by such an arrangement would be primarily public,[12]
this office has not been presented with any information indicating that the benefits to the public are the primary purpose of the arrangement in question in the instant inquiry.
Therefore, while a municipality is not precluded from taking back a mortgage on the surplus property it sells, I am of the opinion that the subordination of that mortgage to that of a private lender where the primarily beneficiary of such an arrangement is the private for profit corporation purchasing the property is impermissible.
RAB/tjw
[1] See, s. 166.021(1), F.S. And see, s. 2(b), Art. VIII, State Const., which Ch. 166, F.S., the Municipal Home Rule Powers Act, implements.
[2] See, AGO 82-76.
[3] Section 10, Art. IX, State Const. 1885.
[4] See, Dade County, Board of Public Instruction v. Michigan Mutual Liability Company, 174 So.2d 3, 5, 6 (Fla. 1965); Bailey v. City of Tampa, 111 So. 119, 120 (Fla. 1926).
[5] Wald v. Sarasota County Health Facilities Authority,360 So.2d 763 (Fla. 1978) (word "credit" as used in s. 10, Art. VII, State Const., implies the imposition of some financial liability upon the state or political subdivision which results in the creation of a state or political subdivision debt for the benefit of private enterprises); Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971) (neither full faith and credit nor taxing power of state pledged to payment of revenue bonds where purchasers of such bonds may not look to any legal or moral obligation on part of state to pay any portion of bonds).
[6] 376 So.2d 1158 (Fla. 1979).
[7] And see, Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971).
[8] See, s. 166.021(1), F.S., providing that municipalities in Florida possess broad governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services. And see, s. 2(b), Art. VIII, State Const., which Ch.166, F.S., the Municipal Home Rule Powers Act, implements.
[9] And see, AGO 82-58 in which this office stated that a school board may lawfully sell surplus school real property by accepting partial payment of the purchase price and deferring the payment of the balance to a future time on an installment payment basis with the deferred balance secured by a purchase money mortgage on the property sold.
[10] Cf., Eurovest Limited v. 13290 Biscayne Island Terrace Corp., 559 So.2d 1198 (3 D.C.A. Fla., 1990), Baskin, J., specially concurring (subordinated mortgagee has option but not obligation to pay the first mortgagee).
[11] See generally, Glendale Federal Savings and Loan Association v. Guadagnino, 434 So.2d 54 (4 D.C.A. Fla., 1983) (junior mortgagee who is made a party to a foreclosure action brought by a senior mortgagee may have its rights determined or extinguished by the entry of a final judgement in the fore-closure proceeding); Quinn Plumbing Co. v. New Miami Shores Corporation,129 So. 690 (Fla. 1930) (only absolute right to a junior mortgagee is the right to redeem from the senior mortgagee). Cf., State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971) (Legislature may not provide for the mortgaging of projects to secure the repayment of bonds where a public institution could in any way become the lessee of the project; in such a contingency, the temptation would arise for the Legislature, or other state agency, to prevent the loss of property through the process of foreclosure by levying taxes or appropriating funds).
[12] Cf., Ch. 422, F.S. (housing cooperation law); Part III, Ch. 163, F.S. (community redevelopment).