Mr. Patrick G. Gilligan Ocala City Attorney 7 East Silver Springs Boulevard Suite 405 Ocala, Florida 34470
Dear Mr. Gilligan:
On behalf of the City of Ocala, you ask substantially the following question:
May the City of Ocala award industrial or economic development grants to privately owned businesses or industries when the funds for such grants are derived from savings on the purchase of electricity by the city for resale to its customers?
In sum:
The city may make industrial and economic development grants to privately owned businesses if it makes the appropriate legislative determination that such grants serve a municipal purpose.
You state that in 1986 the electrical utility owned by the City of Ocala realized a savings on the purchase of electricity through the Florida Municipal Power Agency. Initially, the savings were refunded entirely to the customers. In order to promote the city's economic development, however, in 1988 the city began placing ten percent of the savings in an "Economic Development Fund" (fund) created for that purpose. The sole source of funding for the fund is the portion of the savings not refunded to the city's customers. The city is in the process of adopting procedures for awarding grants for the purpose of promoting economic development. These grants would be used to fund the expansion of established businesses or the relocation of existing businesses to the City of Ocala, when the expansion or relocation will provide jobs and involve capital investment and consumption of electricity.
Article VII, section 10, Florida Constitution, provides:
Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing: (a) the investment of public trust funds; (b) the investment of other public funds in obligations of, or insured by, the United States or any of its instrumentalities; (c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property.
The purpose of this section is to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would at most be incidentally benefitted.[1]
Should the paramount purpose of an expenditure be a public one, however, an incidental benefit to private entities or individuals does not violate Article VII, section 10, Florida Constitution.
The "paramount public purpose" test for public revenue bond financing of a capital project is applicable when a pledge of public credit or taxing power is involved; but, where there is no pledge of the public's credit, it is enough to show only that a public purpose is served.[2] Thus, "it is immaterial that the primary beneficiary of a project be a private party, if the public interest, even though indirect, is present and sufficiently strong."[3]
The basic premise is that municipal funds may be used only for a municipal purpose.[4] The determination of what constitutes a valid municipal purpose for the expenditure of public funds is a factual determination for the legislative and governing body involved, which in this case would be the City of Ocala City Commission.[5] Such a determination must be made by the city commission and cannot be delegated to this office.[6] In making this determination, however, the commission must make appropriate legislative findings.
In Linscott v. Orange County Industrial Development Authority,[7]
the Supreme Court of Florida concluded that the Legislature's determination in Chapter 159, part II, Florida Statutes, that private economic development serves a public purpose was entitled to great weight and was consistent with the implicit recognition in Article VII, section 10(c), Florida Constitution, that private economic development benefits the public interest.[8]
Thus, if the City Commission for the City of Ocala makes the appropriate legislative findings that the award of grants to private companies serves a municipal purpose, the expenditure of municipal funds to achieve such a purpose would not violate Article VII, section 10, Florida Constitution.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, Bannon v. Port of Palm Beach District, 246 So.2d 737
(Fla. 1971).
[2] Linscott v. Orange County Industrial Development Authority,443 So.2d 97, 101 (Fla. 1983).
[3] State v. Housing Finance Authority of Polk County,376 So.2d 1158, 1160 (Fla. 1979), citing State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971).
[4] See, Attorney General Opinions 83-6 and 72-198.
[5] See, e.g., State v. Housing Finance Authority of Polk County,376 So.2d 1158, 1160 (Fla. 1979).
[6] See, e.g., Attorney General Opinion 83-6, stating that the legislative determination and findings as to the purpose of the ordinance and the benefits accruing to the city from the program could not be delegated to the Attorney General, nor could the Attorney General undertake to make such legislative findings on behalf of the county.
[7] Supra, at n. 2.
[8] Linscott at 101.