Mr. Alan S. Polackwich, Sr. Attorney for the Indian River County Hospital District Suite 501, Univest Building 2770 Indian River Boulevard Vero Beach, Florida 32960-4278
Dear Mr. Polackwich:
On behalf of the Indian River County Hospital District, you ask the following question:
May the hospital district lease district-owned unimproved real property on a long-term basis for nominal consideration to a not-for-profit corporation for the purpose of the corporation constructing and operating a hospice house for the use and benefit of district residents?
In sum:
If the governing board of trustees of the hospital district determines the lease to be in the best interests of the district, the board may lease its unimproved real property on a long-term basis for nominal consideration to a not-for-profit corporation to be used by the corporation to construct and operate a hospice house for the benefit of district residents.
The Indian River County Hospital District (district) is a special district located in Indian River County created by special act to provide health facilities within the district.[1] The district is authorized, among other things, to "construct, purchase, operate, maintain and lease, as lessee or lessor," health care facilities to provide health and medical services.[2] You state that the district acquired 80 acres of unimproved property in the early 1970s and constructed a hospital and additional facilities on the property. In 1984, the district, pursuant to section 155.40, Florida Statutes, leased all of the facilities located on approximately 55 of the original 80 acres to the Indian River Memorial Hospital District, a not-for-profit corporation. An additional 2 or 3 acres are occupied by a medical office building owned and operated by the district. According to your letter, the district has no current plans with respect to the unimproved property.
Visiting Nursing Association of the Treasure Coast, Inc. (VNA), a not-for-profit corporation operating in Indian River County, has proposed leasing approximately 4.2 acres of the district's unimproved property to build and operate a hospice house to provide an inpatient facility for terminally ill patients to whom hospice services are offered. Approximately half of the 4.2 acres would be used for the construction of the hospice facility while the remaining land would be held for future expansion of the facility. VNA will provide all the funds for the construction of the facility. According to the materials attached to your letter, the lease would contain:
1. A covenant that the facility will always be used to serve a clearly stated public purpose; 2. A covenant that the facility will be available to all residents of the county, including indigents; 3. A provision giving the district the right to control and monitor programs at the facility to ensure that they are consistent with the public purpose; 4. A covenant that no liens or encumbrances will be placed on the property or facilities; 5. A requirement that the lessee will at all times be a not-for-profit corporation and that no profits or private gain will inure to the benefit of any individual as a result of the facility; 6. A provision that the lease will terminate if the facility is ever operated in a manner that does not serve the public purpose; and 7. A provision that upon termination of the lease for any reason, the property and facilities will revert to the district.
Article VII, section 10, Florida Constitution, prohibits the state, a county, school district, municipality, special district, or agency thereof, from lending or using its taxing credit to aid any private corporation, association, partnership or person. The purpose of the above constitutional provision (and its predecessor under the 1885 Constitution)[3] is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most incidentally benefited."[4]
When a public purpose is involved, however, the courts have recognized the authority of a local government to accomplish the purpose through the medium of a not-for-profit corporation.[5] For example in Raney v. City of Lakeland,[6] the Supreme Court upheld the validity of a 99-year lease of municipal land to a not-for-profit corporation for nominal consideration. The property was to be used by the not-for-profit, quasi-public corporation for the establishment and maintenance of a public library by the corporation at its own expense. This office in Attorney General Opinion 77-27 concluded that a municipality had the authority to enter into a long-term lease of its land to a private not-for-profit organization that would construct a building on the property to be used for counseling, testing and educational programs related to sickle cell disease. In such cases, the courts, however, have required that "some control [be] retained by the public authority to avoid frustration[.]"[7]
The provision of hospice services at an inpatient facility for terminally ill patients appears to serve a public purpose. Moreover, the district is authorized to establish, operate and construct health facilities in or through which the district provides health and medical services.[8] "Health facility" is defined in the district's enabling legislation to mean:
"a building, structure or unit or any improvement to real property, including all necessary and usual attendant and related equipment, facilities or combinations thereof, including, but not limited to, a general hospital, psychiatric hospital, ambulatory clinic or center, chronic extended care and intermediate care facility, nursing home, life-care research facility, maintenance facility . . . or any other related facility, including parking and other facilities necessary or desirable for the orderly operation of a health facility. . . ."[9]
While not specifically mentioned within the act, the facility appears to be in the nature of a nursing home and thus within the parameters of the district's authority to establish. In the instant inquiry, the property would be leased to a not-for-profit organization to provide hospice care that would be available to all persons within the county. No public property is placed in jeopardy and the district would retain control over the programs offered to ensure that the public purpose will not be frustrated. Accordingly, the lease would not, in my opinion, appear to violate the provisions of Article VII, section 10, Florida Constitution.
For such a lease to be valid, however, the district must have the statutory authority to lease district property. This office has consistently stated that statutory entities such as special districts possess only such powers and authority as have been expressly granted by law or necessarily implied therefrom in order to carry out an expressly granted power.[10] The board of trustees of the hospital district has been granted the authority to lease, as lessee or lessor, real and personal property and to perform such other acts as the board deems expedient to carry out the purposes of its enabling legislation.[11] Thus, the district's enabling legislation specifically grants the board of trustees, as the district's governing body, the authority to lease district land.
Accordingly, I am of the opinion that if the governing board of trustees of the hospital district determines the lease to be in the best interests of the district, the board may lease its unimproved real property on a long-term basis for nominal consideration to a not-for-profit corporation to be used by the corporation to construct and operate a hospice house for the benefit of district residents.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, Ch. 61-2275, Laws of Florida, as amended by Chs. 71-688, 72-568, 74-499, 76-387, and 84-451, Laws of Florida (hereafter "act").
[2] Section 2 of Ch. 61-2275, Laws of Florida, as amended by s. 2, Ch. 84-451, Laws of Florida.
[3] Article IX, s. 10, Fla. Const. 1885.
[4] See, Bannon v. Port of Palm Beach District, 246 So.2d 737,741 (Fla. 1971). And see, Bailey v. City of Tampa, 111 So. 119,120 (Fla. 1926).
[5] See, e.g., Burton v. Dade County, 166 So.2d 445 (Fla. 1964); in which the court upheld a county plan to construct a planetarium on county-owned property which would be operated by a not-for-profit corporation.
[6] 88 So.2d 148 (Fla. 1956). And see, Bailey v. City of Tampa,supra; State v. City of Miami, 72 So.2d 655 (Fla. 1954) (city may issue revenue bonds to construct warehouse to be leased to not-for-profit organization for purpose of storing equipment necessary for annual Orange Bowl parade).
[7] O'Neill v. Burns, 198 So.2d 1, 4 (Fla. 1967).
[8] See, s. 2, Ch. 61-2275, Laws of Florida, as amended by s. 2, Ch. 84-451, Laws of Florida.
[9] Section 1.1(2) of the enabling legislation as added by Ch. 84-451, Laws of Florida.
[10] See, e.g., Ops. Att'y Gen. Fla. 86-90 (1986); 85-65 (1985).And see, Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 82 So. 346 (Fla. 1919); Lee v.Division of Florida Land Sales and Condominiums, 474 So.2d 282
(Fla. 5th DCA 1985).
[11] See, s. 4, Ch. 61-2275, Laws of Florida, as amended by s. 4, Ch. 84-451, Laws of Florida. Cf., s. 2.1(4), Ch. 61-2275, Laws of Florida, as added by s. 3, Ch. 84-451, Laws of Florida, authorizing the board to sell real or personal property as it deems by resolution are no longer useful in connection with the operation of health facilities and the health and medical services provided therein.