Ms. Cynthia S. Prettyman General Counsel Palm Beach County School District 3318 Forest Hill Boulevard West Palm Beach, Florida 33406-5813
Dear Ms. Prettyman:
On behalf of the School District of Palm Beach County, you have asked substantially the following questions:
1. In light of the provisions of Article VII, section 10, Florida Constitution, is a school district authorized to serve as a charter member of a nonprofit corporation formed in accordance with 26 U.S.C.A. section 501(c)(3) if the corporation's main purpose is to gather surplus equipment and supplies from industry and disseminate those items at little or no cost to other nonprofit corporations and public schools?
2. May employees of this same school district fill two appointed seats on the board of directors for said corporation?
In sum:
1. It would not be a violation of Article VII, section 10, Florida Constitution, for a school district to serve as a charter member of a nonprofit corporation formed in accordance with26 U.S.C.A. section 501(c)(3) when the school district has no ownership interest or shareholder interest in the corporation and no school district funds are being committed to the operation of the corporation.
2. Employees of the school district may be appointed to the board of directors of this corporation provided no conflicts are found with the school personnel policy or the Code of Ethics for Public Officers and Employees, Part III, Chapter 112, Florida Statutes.
Question One
The School District of Palm Beach County has been invited to be a charter member of a 501(c)(3) organization, The Resource Depot, Inc. (corporation).[1] According to the Articles of Incorporation (articles):
"[t]he purpose of this Corporation is to operate exclusively for educational, charitable and scientific purposes including for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code. . . . More specifically, but without limitation, this Corporation has the purpose of providing supply centers and a program whereby industry's usable byproducts are collected and redistributed to schools, day care centers, and community organizations as inexpensive or free educational materials with the dual goal of saving both industry and the environment the expense and problem of disposal as well as a cost saving or reduction in cost to the public/private schools and community."[2]
The members of the corporation have no right, title or interest in the income, property, or assets of the corporation. The articles provide that upon the dissolution of the corporation, no portion of the income, property or assets may be distributed to any member.[3] Further, no part of the net earnings of the corporation inure to the benefit of or may be distributed to the members, trustees, officers or other private persons.[4]
The Articles of Incorporation provide that members of the corporation may not be held personally liable for the debts, liabilities, or obligations of the corporation.[5] According to the bylaws, the members of the corporation have no rights, privileges, or duties other than to appoint directors.[6] The corporation has promised to indemnify "any officer, director, employee, or agent, and any former officer, director, employee, or agent to the full extent permitted by law."[7]
You have asked whether the school district may serve as a charter member of the corporation under these facts without violating Article VII, section 10, Florida Constitution.
Article VII, section 10, Florida Constitution, provides in part:
"Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person. . . ."
The courts have recognized that where there is some clearly identified public purpose as the primary objective and a reasonable expectation that such purpose would be accomplished, a public entity may loan or pledge public funds or property to a not-for-profit corporation. The public entity, however, must retain some control over the public funds, in order to avoid the frustration of the public purpose.[8] While a public entity may expend public funds to accomplish a public purpose, Article VII, section 10, Florida Constitution, would appear to preclude a public agency from loaning or extending its credit to a private for-profit corporation.
With regard to implicating the taxing power or credit of the school board, the purpose of the constitutional provision (and its predecessor under the 1885 Constitution, Article IX, section 10, Florida Constitution 1885) is to keep public entities out of private business, to insulate public funds against loans to individual corporations or associations, and to withhold the credit of public entities from entanglement in private enterprise.[9] In determining whether the public credit has been loaned, the courts have generally stated that the public must be directly or contingently liable to pay something to someone. As the Supreme Court of Florida stated in State v. Housing FinanceAuthority of Polk County,[10] the lending of credit means the assumption by the public body of some degree of direct or indirect obligation to pay a debt of the third party. In situations where there is no such undertaking by the public body to pay the obligation from public funds and no public property is placed in jeopardy by default of the third party, there is no lending of the public credit.
My review of the operation of The Resource Depot, Inc., and the duties and responsibilities of the charter members of the corporation leads me to conclude that the school district's participation as a charter member of the corporation would not violate Article VII, section 10, of the Florida Constitution. The purpose of the constitutional provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited."[11] The school district has no ownership interest or shareholder interest in the corporation and no school district funds are being contributed or otherwise committed to the operation of The Resource Depot, Inc., by the Palm Beach County School District. Rather, it appears that the school district may benefit substantially from the operation of this corporation as the recipient, at no cost, of equipment and supplies. Further, the wider community will benefit from the recycling component of this arrangement both in terms of the environmental impact of reducing waste and in the benefits to schools, day care centers and other community organizations that can utilize these products creatively.
Question Two
With regard to your second question, I see no constitutional or statutory impediment to two employees of the school district being appointed to serve on the board of directors of The Resource Depot, Inc. However, the school district's personnel policy should be reviewed to ensure that no problem may arise under those provisions. Additionally, depending on the employees appointed, the school district may wish to contact the Florida Commission on Ethics to determine whether any conflict of interest exists for those particular employees.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] According to Art. III of the By-Laws of The Resource Depot, Inc., other charter members include: the Solid Waste Authority of Palm Beach County, the Children Services Council of Palm Beach County, and the Florida Power and Light Corporation.
[2] Article III, Articles of Incorporation for The Resource Depot, Inc.
[3] Article VIII, id.
[4] Article IX, supra at n. 2.
[5] Article VIII, supra at n. 2.
[6] Article III, By-Laws of the Resource Depot, Inc.
[7] Article X, Articles of Incorporation for The Resource Depot, Inc.
[8] See, O'Neill v. Burns, 198 So.2d 1 (Fla. 1967); and see,e.g, Attorney General Opinions 96-12 (1996), (hospital district may enter into contracts with other not-for-profit and for-profit corporations for the provision of health care facilities), 83-45 (1983) (Division of Workers' Compensation's expenditure of public funds for leasing and installation of computer terminals in offices of private insurance companies for pilot project did not violate s. 10, Art. VII, State Const.).
[9] See, Dade County, Board of Public Instruction v. MichiganMutual Liability Company, 174 So.2d 3 (Fla. 1965); Bailey v. Cityof Tampa, 111 So. 119, 120 (Fla. 1926).
[10] 376 So.2d 1158, 1160 (Fla. 1979).
[11] Bannon v. Port of Palm Beach District, 246 So.2d 737, 741
(Fla. 1971). Cf., Markham v. State, Department of Revenue,298 So.2d 210 (Fla. 1st DCA 1974); State v. Town of North Miami,59 So.2d 779 (Fla. 1952); and Bailey v. City of Tampa, 111 So. 119 (Fla. 1926).